TEXAS & PACIFIC RAILWAY COMPANY v. B. F. HASSELL.

Decided May 26, 1900.

**1. Connecting Carriers—Adjusting Freight Charges—Delay—Custom.**

Evidence of a custom between two connecting carriers to the effect that when a controversy arose over freight charges the carrier receiving the freight from the other held it in warehouse until adjustment or correction, is not admissible against a consignee suing for delay of freight where he had no knowledge of such private understanding, and such custom was not a general one.

**2. Same—Liability Not Avoided.**

A connecting carrier receiving freight from another carrier in the usual way, on which the charges are to be collected at its destination, can not escape liability for delaying to forward it because of excessive freight charges thereon, since the carrier is not bound to collect more than legal charges, and could make the adjustment afterwards.

**3. Carriers—Charge of Court—Measure of Damages for Delay.**

Where the court had charged at the request of defendant carrier that the measure of damages for delay in transporting a certain machine was the fair cash rental value of the machine during the time of delay, it properly refused another charge requested by defendant to the effect that no recovery could be had of the rental value because defendant was not shown to have had notice that the machine was to be used at once, since this conflicted with the former charge.

**4. Same—Rental Value.**

The fair cash rental value of a feather renovating machine, constituting the measure of the damages which the consignee was entitled to recover of the carrier for delay in its transportation, did not include the profit the consignee might have realized from operating the machine during the time it was delayed, nor its rental value together with teams, wagons, and hands to operate it.

**5. Same.**

That the profits in operating the machine at the point of destination, had it been received in due time, would have been greater than at other points, could not be considered as an element of damages where the carrier had no knowledge of that fact.

APPEAL from Harrison. Tried below before Hon. W. J. GRAHAM.

*F. H. Prendergast,* for appellant.

*T. P. Young,* for appellee.

RAINEY, CHIEF JUSTICE.—This is an appeal from a recovery had against the Texas & Pacific Railway Company for delay in the shipment of a feather renovating machine.

The machine came from Bolivar, Tenn., to Jackson, Miss., on the Illinois Central Railway, and from Jackson through Vicksburg to Shreveport, La., on the Vicksburg, Shreveport & Pacific Railway, without delay.

The shipment was on a through bill of lading, and when it reached Shreveport it was delivered to the Texas & Pacific Railway Company, March 26, 1896, by being loaded into a car which was set onto a track in the Texas & Pacific yard used for that purpose, and the Texas & Pacific agent furnished with a transfer sheet showing the articles, point of origin, rate of charges, etc. The Texas & Pacific, instead of forwarding the machine, took it from the car and placed it in its warehouse, where it remained until April 21, 1896, when it was forwarded and delivered to the consignee at Marshall, the point of destination.

It is claimed by the Texas & Pacific that the machine was not received on account of excessive charges, and same was held awaiting an adjustment thereof. The agent of the Texas & Pacific at Shreveport testified that when the transfer sheet was received by him he notified the agent of the Vicksburg, Shreveport & Pacific over the telephone that the machine would not be accepted unless the charges were corrected, and afterward on April 7, 1896, he gave notice to the same effect by letter. The agent of the Vicksburg, Shreveport & Pacific testifies that no notice was given until the letter was received, April 7th.

On the trial appellant offered evidence to show that there was a custom at Shreveport between the Vicksburg, Shreveport & Pacific Company and the Texas & Pacific Company that when a controversy arose about the amount of charges on freight tendered by one company to the other, the company to whom the freight was delivered should hold it in its warehouse until such time as it was either forwarded by that company or returned to the delivering company at its request, and that the shipments were not forwarded when there was a controversy as to the amount charged until the rate was adjusted or corrected.

The evidence was objected to on the ground that it was illegal and void; that the consignee had no notice thereof, and same affected the two roads alone. The objection was sustained, and this ruling is assigned as error.

We are of opinion that the court did not err in excluding the evidence. The evidence sought to establish a private understanding between the two companies at Shreveport which was not known to the plaintiff, and was not such a general, established, and uniform custom in the business as to bind the plaintiff, whether known or not, or relieve the defendant from the general obligation to forward the machine to its destination. Hutch. on Carriers, secs. 103b, 104.

The possession of the machine was given to the defendant in the usual way. It did not demand the payment of its charges in advance for transporting the machine to Marshall. The charges were to be collected at the point of destination, and if the charges were greater than authorized by law, the defendant was not bound to collect more than the legal rates. It could have transported the machine to its destination and collected the legal rate, and then had an adjustment with the other road.

The controversy about rates with the other road was not a sufficient

excuse, under the circumstances, to relieve defendant from the consequences of the delay.

The appellant groups the fourth and fifth assignments of error, which are as follows: "(4). The court erred in refusing special charge number 1, asked by defendant, as follows: 'In this case the plaintiff can not recover the rental value of the machine, because there is no evidence that the defendant had any notice that the feather renovator was shipped to Marshall to be at once used in cleaning feathers.' (5) The court erred in refusing special charge number 3, asked by defendant as follows: 'The measure of damages is the fair cash rental value of the feather renovating machine that was shipped, during the length of time the same was wrongfully delayed in being transported. This does not mean the amount of profit the plaintiff might have realized from operating the machine during the time it was delayed. You must find the rental value of the machine alone, and not the value together with teams, wagons, and hands to operate and manage it.' "

These charges are conflicting. The first directs that the rental value could not be recovered, while the other makes the cash rental value the measure of recovery. If it should be conceded that the first charge requested was the law of the case, the appellant is in no attitude to complain, for having asked the court to charge the jury that the measure of damages was the cash rental value of the machine during the time of delay, and the court having so charged, the objection to the action of the court in refusing the first requested charge will not be entertained. The special charge number 3, requested by appellant, quoted above, states the proper rule as to the measure of damages in the character of cases as we understand it.

Mr. Hutchinson in his work on Carriers, section 776, lays down the rule thus: "Where the goods are not intended for sale in the market of destination, but are intended to serve some specific purpose of the owner, the rule that the carrier will be liable for depreciation in the market value during his negligent delay will, of course, not be applicable; and in the absence of special circumstances which may make the carrier liable for some special loss, or for the expense to which the owner may be put by his negligent delay, he could be held liable only for the inconvenience to which the owner had been put by being deprived of the use of his property during the time of the delay; which must be determined as a question of fact by the jury, by ascertaining from the evidence the value of its use, the criterion of which would be, in most cases, its rental value during the delay; or, in case of an absolute refusal to transport according to contract, for such time as would be requisite to obtain the article by another conveyance or from some other source."

This rule is supported by the great weight of authority. It conforms to the well recognized rule announced in the leading case of Hadley v. Baxendale, 9 Exch., 353, which is, "Where two parties have made a contract which one of them has broken, the damages which the other party

ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may be reasonably supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it." Express Co. v. Darnell, 62 Texas, 639.

The natural and proximate result flowing from the delay in transporting the machine was the loss of its use during that time, and such loss must be considered as having been contemplated by the initial carrier at the time the contract of carriage was entered into, and by all connecting carriers over whose roads the shipment was transported. Of course special damages will not be considered as being in the contemplation of the parties unless the conditions out of which such damages might ordinarily arise are made known to the carrier at the time the contract is made.

The court charged the jury that the rental value of the machine alone was the measure of damages and that profits could not be considered. This was proper as far as it went, but in view of the evidence it was not sufficient in applying the law to the facts, which was called to the court's attention by special charges requested by appellant, the substance of which should have been given. One of the special charges was to the effect that plaintiff could "not recover any special benefit the machine would have been to him at Marshall during the time it was delayed, more than it would have been at some other place." The evidence shows that the machine was used for renovating feathers; that when the supply was exhausted at one place they went to another; that at some places the supply was greater than at others, and at Marshall the supply was greater than the majority of towns, and the profits in operating the machine there were therefore greater. Plaintiff was not deprived by the delay from working up the supply there, but after the machine was delivered he remained there until the supply was exhausted, then went to another place to operate his machine. We are of the opinion that the general value of the use of the machine was the criterion to govern, and not the enhanced value by being at Marshall, as that fact was not known to the carrier, nor can it be considered as having been in contemplation of the parties when the contract of shipment was entered into.

In special charge number 3, the court was requested to instruct the jury that they "must find the rental value of the machine alone, and not the value together with teams, wagons, and hands to operate and manage it."

On the issue of the value of the use of the machine, one of the plaintiff's employes testified, "I think $600 a fair rental value for said time," meaning the time of the delay. The plaintiff testified: "When I say $500 rent, I mean for the whole outfit, horses and wagons and machine, and I can not tell how much the rent of the machine alone would be. It would be some less, but the wagons and horses did not amount to

much, as they could easily be obtained." Appellant's witnesses estimated the value of the use to be from $30 to $50 per month. There was also testimony tending to show the amount of profits realized at Marshall by working up the supply there. Under the circumstances, the value of the teams, wagons, and hands could not be considered as part of the damages recoverable against defendant, and the court should have so instructed the jury. The failure of the court to exclude from the consideration of the jury the value of the use of the teams, wagons, and hands probably caused the large verdict of which appellant complains. Unless these matters were considered by the jury in estimating the damages, it is difficult to understand how they reached the conclusion that the value of the use of a machine costing less than $300 would amount to $420 for the period of twenty-eight days, at which rate it would amount to over $5000 for twelve months.

The machine was a new invention and not in common use. There was no established rental value of the machine, and in determining the value of its use the jury were authorized to consider the character of the machine, its capacity to do work, and the amount of work to be done by it, the expense attached to running it, etc., from which they should arrive at a conclusion what the value of its use would be; that is, what one could afford to pay rental for the privilege of operating the machine alone. In view of the fact that the court did not specifically instruct the jury how they could arrive at the value of its use, and having refused special charges requested that called the court's attention thereto, the judgment will be reversed and cause remanded for a new trial.

*Reversed and remanded.*