## ST. LOUIS & S. F. R. CO. v. FARMERS' UNION GIN CO.

No. 1425. Opinion Filed July 18, 1912.

(125 Pac. 894.)

1. **DAMAGES—Breach of Contract to Lay Switch Track—Elements of Damage.** Where a railroad company has induced a cotton gin company to locate a gin plant on the railroad's right of way, and, for an agreed price paid in advance, contracts to lay a track to the gin plant, the object being to have same ready before the arrival of the heavy machinery and material for the gin, and the putting in of such track is delayed an unreasonable time, in the absence of some plausible excuse for the delay, the road will be held liable for the damage thereby caused; and in an action for the delay, extra expense incurred in moving the machinery and material to the gin site are proper elements of damage.

2. **CARRIERS — Carriage of Goods—Delay—Damages.** Where gin stands and machinery for a cotton gin are shipped over a common carrier to a gin company whose plant is located and being built on the carrier's right of way, the carrier is charged with notice of the purpose and use of such machinery, and the period of the year in which it is used, and, in case of unreasonable and negligent delay in shipment, will be held liable for the damages which are the direct result of such delay, although no express mention of the purpose of such machinery and the period in which it is desired for use is made in the shipping contract.

3. **SAME.** In an action against a carrier for unreasonable and negligent delay in transporting machinery, the detriment caused by the delay is the loss of the use of such machinery during the time; and, where the purpose of the machinery and the period of its use are known to the carrier, the expense incurred in obtaining other machinery, the expense of maintaining idle hands, the rental value of the machinery, if ascertainable with reasonable accuracy, or the interest on money invested in idle machinery, are proper elements of damage; but remote and conjectural matters, such as interest on money borrowed for speculative purposes, or damage done to cotton purchased with such borrowed money—matters not approximately growing out of the delay—are not proper elements of damage. Neither are loss of profits a proper element

unless expressly mentioned and made a condition of the contract
at the time of its execution, and then only when such profits can
be estimated with reasonable certainty.

4.    TRIAL—General Verdict—Separate Causes of Action. Where two
causes of action are submitted together, a general verdict for
plaintiff should not be returned, but there should be separate find-
ings on each cause.

(Syllabus by Harrison, C.)

*Error from Pawnee County Court;*
*H. T. Conley, Judge.*

Action by the Farmers' Union Gin Company against the St.
Louis & San Francisco Railroad Company. Judgment for plain-
tiff, and defendant brings error. Reversed and remanded.

This action was begun May 23, 1908, by the Farmers' Union
Gin Company against the St. Louis & San Francisco Railroad
Company, for damages for breach of two separate contracts:
One, for failure to put in a switch track within the time defend-
ant company had promised to complete same; the other, for
failure to deliver certain machinery, gin stands, which had been
consigned by plaintiff for shipment over defendant road. The
gin company, a corporation, alleged that it had been induced by
defendant to locate its cotton gin upon defendant's right of way;
that plaintiff, by virtue of this agreement, in the early part of
July, 1907, began the erection and construction of the cotton gin
on defendant's right of way in the city of Pawnee.

For its first cause of action it alleged: That subsequent
to the agreement that the gin could be located on defendant's right
of way, plaintiff and defendant, through its agents, on about July
10, 1907, entered into a contract by which defendant obligated
itself to lay a switch track out to plaintiff's gin for the sum of
$586.72, and to complete same within 30 days, the object being
to have said track laid out to the gin in order that the gin ma-
chinery, boilers, and lumber could be unloaded and placed in
position for operation at less expense. Plaintiff alleged that it
paid the contract price to defendant on the day on which the con-
tract was made; that defendant failed to lay such switch track
until after plaintiff's machinery had arrived; that it was not laid
until long after the gin machinery had all arrived, the gin con-

structed and put in operation, although, by the exercise of ordinary diligence, said track could have been laid within ample time for plaintiff's use in shipping in its machinery and material; that, by reason of such unreasonable delay, plaintiff was compelled to pay the sum of $50 as an extra expense in hauling the gin machinery from the railroad to the gin where it was needed; that it was also compelled to pay the sum of $60 as an additional expense in hauling five cars of coal needed for operation of the gin, $72 for hauling eight cars of cotton seed from the gin to the railroad, $150 for hauling 1,225 bales of cotton from the gin to the railroad; and that plaintiff sustained all this additional expense, aggregating $332, by reason of defendant's failure to lay said switch track within the time contracted.

For the second cause of action plaintiff alleged that the damages were sustained by reason of defendant's failure to deliver the gin stands which were to be operated in plaintiff's gin; that such gin stands were purchased at Prattsville, Ala., July 17, 1907. and were duly delivered to and received by defendant company for shipment to the city of Pawnee; that such shipment was negligently and carelessly delayed by defendant at the city of Sapulpa from August 5th to September 15th; that, by reason of such delay in shipment, plaintiff was delayed in the completion of its gin and prohibited from operating same for a period of 40 days; that during such delay, relying on such shipment to be made within reasonable time, plaintiff purchased in the open market 327,000 pounds of cotton at a cost of $11,000; that the capacity of plaintiff's cotton house was only 80,000 pounds; that, by reason of the delay in shipment, plaintiff was unable to gin out the cotton purchased as fast as it came in, and was therefore compelled to pile about 247,000 pounds on the ground, which, lying on the ground and being thus exposed for a period of 40 days, was damaged in marketable quality to the extent of $600. Plaintiff further alleged that by reason of such delay it was unable to gin and market the cotton so purchased, and, such cotton having been purchased with borrowed money, plaintiff was compelled to pay the sum of $100 interest on the borrowed money. Plaintiff further alleged that it had been damaged in the sum of $23 in ex-

penses in endeavoring to locate and trace up its gin stands on defendant's road; the sum of $50 as an attorney's fee. It further alleged that, in order to have the necessary expert hands for the operation of the gin machinery, plaintiff was compelled to keep a machinist for a period of three weeks at an expense of $18 per week, awaiting the arrival of the gin stands, and two other men at $2 a day each, for three weeks; that the aggregate damage sustained by reason of such delay was $949. Wherefore judgment was prayed for in the sum of $1,000.

Defendant answered by general denial.

In May, 1909, the cause was tried, resulting in a general verdict in the sum of $1,000 for plaintiff. Motion for a new trial was presented and overruled, and judgment rendered upon the verdict. From which defendant appeals upon six assignments of error.

*W. F. Evans, R. A. Kleinschmidt,* and *J. H. Grant,* for plaintiff in error.

*Louis S. Wilson* and *Victor O. Johnson,* for defendant in error.

Opinion by HARRISON, C. (after stating the facts as above). There are two distinct causes of action alleged. The court instructed the jury on each. The jury returned a general verdict for $1,000. No objection is urged against the form of the verdict; hence the defective features are deemed to have been waived. While not saying whether a judgment based upon such a verdict would be reversed if properly presented, yet we would suggest that a better practice in suits of this character would be to return separate findings as to each separate cause of action.

"In general, where two causes of action are submitted to the jury at the same time, a general verdict for the plaintiff should not be returned." (22 Pl. & Pr. 849.)

It is a settled rule in Missouri that this form of verdict is reversible error. In *Seibert et al. v. Allen,* 61 Mo. 482, Justice Hough, in delivering the opinion of the court on this question, says:

"There were two counts, each containing a separate and distinct cause of action, and a single verdict would have been improper. In *Mooney v. Kennett,* 19 Mo. 554, Judge Scott said: 'A general finding for the defendant on a petition containing several causes of action may be sustained; but, where the finding is for the plaintiff, every consideration of propriety requires that there should be a verdict in each cause of action, and these will all be blended in one judgment.' *Clark v. Railroad,* 36 Mo. 216; *Pitts v. Fugate,* 41 Mo. 405; *Collins v. Dulle,* 45 Mo. 269; *Bigelow v. Railroad,* 48 Mo. 510; *Owens v. Railroad,* 58 Mo. 394."

Had there been separate findings in each cause of action in the case at bar, the judgment could have been so modified as to obviate another trial; but in its present form it is impossible to ascertain upon what particular facts the verdict is based. We cannot say what issues were found, or whether the verdict is responsive to all the issues involved, and inasmuch as the jury was instructed to take into consideration improper elements of damage in reaching its verdict, and inasmuch as evidence tending to establish improper elements was admitted, we are constrained to reverse the judgment rather than establish an unsafe precedent.

As to the damages alleged to have been sustained by defendant's failure to put in the switch, in the first cause of action, we think each item alleged was a proper element of damage, and that the evidence fairly supports the allegations. It is contended by counsel for plaintiff in error that there was no evidence tending to support the averment that the switch was to be put in within 30 days. Without passing upon this contention, we will say that, under the circumstances in this case, it does not matter whether the defendant company made a definite promise to complete the switch in 30 days or not. The railroad company had induced the gin company to locate its plant on the railroad company's right of way rather than have it located on the right of way of a competing road. Having acceded to defendant's wishes in this regard, the gin company requested that a switch be laid to the gin site, so as to facilitate the handling of the gin machinery and material, and the shipping of cotton and seed from the gin. The railroad company agreed for a stipulated price to lay the switch. The price was agreed upon and money paid to the com-

pany on the day the contract was made. The contract was made July 11th and the track was not completed until November 1st. This, in the absence of some plausible excuse, was an unreasonable delay. Under the agreement the gin company was to do the grading necessary for the switch. This was done within ten days after the contract, and in a manner satisfactory to the railroad, and was accepted by the road. The laying of the switch required but one day's time, after a delay of over three months from the time the grading was completed. And, after the track was laid, there was another delay of about three weeks in putting in a frog by which the tracks were connected, the putting in of which required only about one hour's time. This delay, in our judgment, is closely akin to willfulness, and the only excuse offered is that the road had been unable to get the rails any sooner, and that after the rails were laid it required three weeks more to get a frog. This excuse, in the absence of any showing as to what efforts had been made to get them, is not sufficient to justify the delay. The fulfillment of this contract within a reasonable time is implied by law, whether a definite time was fixed by the contract or not. The railroad had full knowledge of the object and purpose of this switch. It had induced the plaintiff to locate its gin at this point in order to procure the shipping of plaintiff's machinery and material and the products of the gin. It should not be heard to deny knowledge of the purpose of the gin, nor to deny knowledge of the importance of completing the switch within a reasonable time so that the gin could be put in operation by the beginning of the ginning season. The agent of the railroad company who contracted to put in the switch was definitely informed of the importance of having it ready before the arrival of the gin machinery. It was about 40 days after the contract was made before the machinery arrived, and had to be hauled to the gin site by wagons. Inasmuch as it required but one day to put in the switch when the work was finally begun, in the absence of some showing for the delay, we think the defendant was guilty of negligence and should respond for the damages resulting therefrom.

In the second cause of action, wherein the wrong measure of damages was applied, the elements of which being the expense of maintaining idle hands, expense of a trip to Dallas, amount paid as attorney's fee, damages done to cotton piled on the ground, and interest on borrowed money, it is contended by plaintiff in error that the loss alleged to have been sustained by piling the cotton on the ground, and the interest paid on the borrowed money with which such cotton was purchased, are not elements of damage for which the law holds defendant liable, for the reason that such losses are too remote and conjectural and were not contemplated by the parties at the time the shipping contract was made, and that the court erred in admitting evidence in support of such allegations and instructing the jury to take such elements into consideration in fixing the amount of damage. In support of such contention, a great number of authorities are cited, among the leading of which are: *C., R. I. & P. Ry. Co. v. Broe*, 16 Okla. 25, 86 Pac. 441; *Franklin v. Louisville & N. Ry. Co.* (Ky.) 116 S. W. 765; *Texas & Pacific Ry. Co. v. Hassell*, 23 Tex. Civ. App. 681, 58 S. W. 54; *Gulf, C. & S. F. Ry. Co. v. Gilbert*, 4 Tex. Civ. App. 366, 23 S. W. 320; *Priestly v. Northern Indiana & Chicago Ry. Co.*, 26 Ill. 205, 79 Am. Dec. 369; *C., R. I. & P. Ry. Co. v. Planters' Gin & Oil Co.*, 88 Ark. 77, 113 S. W. 352; *Harvey v. C. & P. R. Co.*, 124 Mass. 421, 26 Am. Rep. 673.

So far as the propositions involved in the case at bar have been adjudicated in the cases cited, we think the contention is supported. That is, so far as the general proposition, that before recovery can be had for lost profits the carrier should be notified at the time of making the contract of the specific purpose for which the goods are to be used, and of the losses in profits, or losses expected to be sustained by not having the use of the goods, is fairly well settled by the authorities cited.

On the question of damage for delay in transportation of articles intended for special use in business, Hutchinson on Carriers (3d Ed.) vol. 3, sec. 1369, says:

"If an article is intended for use in business at destination, and the carrier unreasonably delays its transportation, the owner cannot recover for the loss of its use during the delay, or the

profits which he would thereby have made if it had been season-
ably delivered, unless he alleges and proves that the carrier, at
the time the contract for its transportation was made, was in-
formed of the special use to which it was to be put.  And proof
that the carrier had knowledge of the general use to which the
article was to be put will not be sufficient to charge him with
liability for loss of its use or the profits which would thereby
have been made.  The special circumstances of the case requir-
ing care or expedition must have been brought to his attention
in such a way that his acceptance of the article under the cir-
cumstances could fairly be said to amount to an assumption of
the risks which naturally and proximately would flow from his
default.  In a well-considered case (*Vicksburg & Meridian Rail-
way v. Ragsdale,* 46 Miss. 458) in the Supreme Court of Missis-
sippi, in which the complaint was that the carrier had unreason-
ably and inexcusably delayed in the transportation of a boiler,
part of the machinery of a sawmill, for the want of which the
mill was stopped, and its profits were lost, the following prop-
ositions were stated by Simrall, J., as well settled:  First.  That
in actions for damages for breach of contract of that character,
'the proximate and natural consequences of the breach must al-
ways be considered; second, such consequences as from the na-
ture and subject-matter of the contract may be reasonably deemed
to have been in the contemplation of the parties at the time it
was entered into; third, damages, which fairly may be supposed
not to have been the necessary and natural sequence of the
breach, shall not be recovered unless by the terms of the agree-
ment, or by direct notice, they are brought within the expectation
of the parties; fourth, losses of profits in a business cannot be
allowed unless the data of estimation are so definite and certain
that they can be ascertained reasonably by calculation, and then
the party in fault must have had notice, either from the nature
of the contract itself, or by explanation of the circumstances
at the time the contract was made, that such damages would
ensue from nonperformance; fifth, if the contract is made with
reference to embarking in a new business (such as sawing lum-
ber for the market), the speculative profits which might be sup-
posed to arise but which were defeated because of a breach of
contract which delayed the business, cannot be looked to as an
element of damages—these are dependent largely upon other con-
tingencies, skill, industry, energy, the market supply of material,
keeping machinery in order, loss of time by weather, or breakage
of machinery; sixth, if the delay is in the transportation of ma-
chinery, to be applied to a special use, and that is known to the

carrier, he is responsible for such damages as are fairly attributable to the delay, such as the value of the use of the machinery, to be tested by its rental price, or other approximate means, the expenses of idle hands, the loss of gain on work contracted to be done for another person, if such work could have been done if the machinery had been delivered, and the gain thereby definitely ascertained in proper time; seventh, the party injured by the delay must not remain supine and inactive, but should make reasonable exertions to help himself, and thereby reduce his losses and diminish the responsibility of the party in default to him.''

The foregoing test seems to be the settled rule of law on the propositions therein stated. The author has deduced this test from the vast number of cases on the question, and, aside from being supported by the weight of authorities, it is well founded in reason.

In the case at bar, there are elements of damage which could not be said to have been fairly within the contemplation of the parties at the time the goods were consigned, namely, the attorney's fee, the interest on money borrowed to buy cotton with, and the damage done to the cotton thus purchased. There is no evidence reasonably tending to support the fact that, at the time the gin stands were shipped, the railroad was informed that the gin company was going to borrow $11,000, or to borrow any money for that matter, and pay $100 interest therefor, or that it would probably purchase 247,000 pounds of cotton and pile same out on the ground, and that such cotton would be damaged in the sum of $600 by lying on the ground, nor was it contemplated by the parties that a counsel fee of $50 would be paid in the event of delay. It seems reasonable to suppose that, had these elements of damage been made a condition of the contract, the carrier would have declined to assume the risk. But, whether it would have done so or not, there is no evidence showing that these elements were considered or contemplated by the parties at the time the contract was made. The fact that the gin machinery was ordered by plaintiff from the Continental Gin Company of Dallas, Tex., and that the Continental Gin Company ordered it from a firm in Prattsville, Ala., and that the Prattsville Company consigned it for shipment to plaintiff,

tends rather to disprove than prove the contention that the railroad was informed of any probability of plaintiff's borrowing money or piling cotton on the ground or employing an attorney. The record does show that plaintiff repeatedly informed defendant of the conditions after the delay occurred; but notice of special circumstances after the shipping contract has been made, and after the goods have been shipped, will not operate to fix a liability for special damages not taken into consideration at the time the contract was made. Hutchinson on Carriers, vol. 3, pp. 1621-1626, and authorities cited in notes; also, *Swift River Co. v. Fitchburg R. Co.*, 169 Mass. 326, 47 N. E. 1015, 61 Am. St. Rep. 288; *Missouri, etc., R. Co. v. Belcher*, 89 Tex. 428, 35 S. W. 6; *Illinois Central R. Co. v. Southern Seeding Co.*, 104 Tenn. 568, 58 S. W. 303, 50 L. R. A. 729, 78 Am. St. Rep. 933; *Gulf, etc., R. Co. v. Loonie*, 82 Tex. 323, 18 S. W. 221, 27 Am. St. Rep. 891; *Bradley v. Chicago Ry. Co.*, 94 Wis. 44, 68 N. W. 410; *Franklin v. L. & N. Ry. Co.* (Ky.) 116 S. W. 765.

The record shows that the gin stands should have reached their destination not later than August 11th, and that on September 6th, after nearly a month's delay, plaintiff began purchasing cotton, and continued to do so and to pile the cotton on the ground, thereby increasing the chances of loss, with full knowledge that the shipment had not only been delayed, but that the car had been lost and could not be located. Under this state of facts, considering the remote and speculative character of the loss claimed, and that the circumstances were not in contemplation when the contract was made, the carrier could not be held liable for interest paid on borrowed money, nor for damage done to cotton piled on the ground. But the evidence does show an unreasonable delay in transportation, and that the contract was of such a nature and the machinery of such character as to charge the carrier with notice of the purpose for which it was intended and the period in which it was intended to be used. The goods were delivered to defendant company by the initial carrier July 28th; they arrived September 17th. Ten days to two weeks was shown to be reasonable time; the other machinery, shipped at the same time, came in eleven days. The

excuse for the delay of the gin stands was that the car got lost in some way and could not be found. This was negligence of itself. The law of reasonable diligence imposes a higher degree of care on the part of a common carrier than to allow a freight car containing four gin stands to be totally lost for a period of 40 days. Such management is negligent, and such a delay cannot be justified on such grounds. It constitutes a degree of negligence which renders the carrier liable for the actual damages thereby caused. The only question is the proper measure of damages.

In the case at bar it could not be the interest on money borrowed for the purpose of speculating in cotton, nor the damage done to the cotton thus purchased, for the reasons above stated. Nor the rental value of the gin stands, nor interest on amount invested in idle machinery, because these elements were not alleged in the petition, nor could it be the difference in the market value of the gin stands, for they were not intended for market or sale. They were intended for a specific, mechanical use, and the detriment resulting from the delay did not grow out of the difference in market value. The difference in market value could in no way lessen or increase the detriment resulting from the delay. The detriment would have been just the same whether the difference in market value be increased or diminished, or whether such difference be $1 or $1,000. It was not intended for sale. It was intended for *use*. Whatever detriment was caused, or whatever harm was done, resulted not from any fluctuation in market values, but from being deprived of the specific, mechanical use for which this machinery was intended, and without which plaintiff could not operate its gin. Hence it seems to us that whatever net benefit or value the use of this machinery would have been to consignee is the true measure of damages. Its *use,* in the specific office for which it was designed, is the thing which plaintiff lost. Now, what injury resulted from this loss, what detriment was caused, what harm was done to plaintiff by losing the *use* of this machinery, and what measure is to be applied in ascertaining such harm, are the questions to be determined.

In Hutchinson on Carriers, p. 1639, sec. 1373, we find the following rule:

"Where the goods are not intended for sale in the market of destination, but are intended to serve some specific purpose of the owner, the rule that the carrier will be liable for depreciation in the market value during his negligent delay will, of course, not be applicable; and in the absence of special circumstances which may make the carrier liable for some special loss, or for the expense to which the owner may be put by his negligent delay, he could be held liable only for the inconvenience to which the owner had been put by being deprived of the use of his property during the time of the delay; which must be determined as a question of fact by the jury, by ascertaining from the evidence the value of its use, the criterion of which would be, in most cases, its rental value during the delay; or, in case of an absolute refusal to transport according to contract, for such time as would be requisite to obtain the articles by another conveyance or through some other source."

See, also, authorities cited in note 8, in support of the foregoing rule. We observe also, in connection herewith, the rule in division 6, in *Vicksburg & Meridian Ry. Co. v. Ragsdale,* 46 Miss., *supra.*

Hence, in view of the foregoing authorities, and under the pleadings, in their present state, we think the only proper elements of damage to which the plaintiff is entitled in the second cause of action were the expenses incurred by plaintiff in trying to get its machinery, and the expense of maintaining idle hands during the delay.

The judgment therefore should be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.