The CITY OF ENID, Oklahoma, a Municipal Corporation, Plaintiff in Error,

v.

Frank W. CROW and Frances M. Crow, Defendants in Error.

No. 37541.

Supreme Court of Oklahoma.

Sept. 24, 1957.

Rehearing Denied Oct. 22, 1957.

McKnight & Gasaway, Enid, for plaintiff in error.

Ted R Fisher, Tulsa, for defendants in error.

JACKSON, Justice.

This is an action for damages. It stems from the taking or withdrawal of percolating underground waters for sale off the premises, resulting in alleged reduction of water supply and permanent damages to plaintiffs' adjacent property.

The parties will be referred to as they appeared in the trial court.

Plaintiffs, Frank W. Crow and Frances M. Crow, own and occupy as their homestead a 160 acre farm in Major county. By virtue of a lease agreement defendant, The City of Enid, acquired subterranean water rights on an adjoining farm, on which it drilled a water well in February of 1955. This well was located approximately 1000 ft. from a well on plaintiffs' property which was their sole source of water supply.

The well drilled by defendant, designated "Well No. 33", was drilled as an integral part of its water distribution system, and produced water for distribution and sale in the city of Enid.

After Well No. 33 was completed defendant made several pumping tests, whereupon plaintiffs complained that their water supply was being depleted and demanded that defendant take remedial action. The defendant drilled a new well for plaintiffs on plaintiffs' farm, greater in depth than the old well, and to the approximate depth of defendant's well. Plaintiffs abandoned their old well, traded their old pump in on a new and larger pump for the new well, and built a well house over it so that the equipment at the new well was similar to that at the old well.

The new well produced an adequate supply of water until the following summer at which time the water supply in plaintiffs' new well diminished to such an extent that plaintiffs could run only one faucet at a time.

Prior to defendant's activities, plaintiffs' old well had always produced enough water to run three faucets at the same time. The present action was instituted shortly after the dearth of water in the new well became apparent. Two days after summons was served defendant quit pumping its well and never resumed pumping operations pending the commencement of this trial on April 9, 1956.

It is alleged in plaintiffs' petition that the defendant's acts depleted the water supply in plaintiffs' old well; that the attempt to restore such supply by drilling the new well was unsuccessful and that the permanent damage to plaintiffs' land was $4,739, and that plaintiffs had suffered additional special damages in the total sum of $936, representing the cost of a new pump house, loss of time from work and the difference in the cost of the new pump and the salvage of the old pump. The jury returned a verdict for $3811.41 permanent damages and $695.89 special damages.

For reversal defendant presents its argument in five propositions:

Defendant's first proposition is directed to the sufficiency of the evidence. In this regard it is first contended that there is no evidence establishing a causal connection between the acts of the defendant and the injury of which plaintiffs complain; and secondly, that there is no competent evidence showing that plaintiffs were damaged. We are of the opinion that the evidence was sufficient to show that plaintiffs were damaged; therefore, we will first consider defendant's first contention on the question of causal connection.

There is testimony to the effect that each time the defendant pumped its Well No. 33 the static water level in plaintiffs' old well would fall. There is also testimony that the static water level in plaintiffs' new well dropped several feet after defendant pumped its Well No. 33 so that plaintiffs' new well would not produce more than one faucet of water at the time this action was filed.

It is recognized that causal connection, if established in this case, is established by

circumstantial evidence. There was expert testimony offered by defendant to the effect that there was no connection between the water level and water producing shale in plaintiffs' old well and the water level and producing shale in defendant's Well No. 33. This expert testimony, if impeached at all, was only impeached by the circumstantial evidence above mentioned.

■ In civil cases it is not necessary that the proof rise to such degree of certainty as to exclude every other reasonable conclusion. In the first paragraph of the syllabus in Chickasha Cotton Oil Co. v. Hancock, Okl., 306 P.2d 330, 332, it is held:

"In civil cases, facts may be proved by direct or circumstantial evidence, or a combination of both; and it is not necessary that such proof rise to such degree of certainty as to support only one reasonable conclusion and exclude all others."

■ In this case the expert testimony was based upon a minimum of known facts. There were no precise absolute scientific principles supporting the conclusion reached by the experts. Nor was it possible to trace all of the underground crevices and formations in the area to prove or disprove a connection between the water bearing stratas. Generally, in the absence of unimpeachable scientific conclusions a jury may accept circumstantial evidence which reasonably tends to support their conclusion and reject the opinion of experts. See Peppers Refining Co. v. Spivey, Okl., 285 P.2d 228 and discussion in 20 Am.Jur. page 1059, § 1208.

■■ We now consider the sufficiency of the evidence as to damages, and first whether plaintiffs were entitled to recover the special damages claimed. There was sufficient evidence tending to show that plaintiffs' water supply in the old well was substantially less than the supply existing prior to the time the defendant completed and pumped Well No. 33. This being true, and the causal connection having been established, the plaintiffs were entitled to recover all legitimate expenses reasonably incurred by them in an honest endeavor to

reduce the damages flowing from defendant's wrongful acts. The foregoing principle of law is expressed in 25 C.J.S., Damages § 49, p. 531, and applied in St. Louis & S. F. R. Co. v. Farmers' Union Gin Co., 34 Okl. 270, 125 P. 894. It follows then that plaintiffs were entitled to recover the cost of equipping the new well, less the salvage value of the old equipment, and all other reasonable expenses incurred in connection with their good faith efforts to obtain an adequate substitute water supply. Such damages totaled $695.89, all of which were properly awarded plaintiffs by the jury. The jury erroneously denominated such damages as temporary damages. Defendant argues that both temporary damages and permanent damages cannot be recovered. It is not necessary to answer this argument. The evidence clearly established such items as special damages and there was no evidence introduced by plaintiffs in an effort to show the amount of their temporary damages, if any.

We encounter a more complex problem in considering the award of $3,811.41 as permanent damages.

Defendant argues that the water supply in plaintiffs' new well was equal to that in their old well and that, therefore, plaintiffs did not sustain permanent damages. As hereinabove pointed out plaintiffs testified that the new well would not supply more than one faucet at a time. The gravamen of defendant's argument is that this condition could not possibly exist, unless plaintiffs' equipment was defective. In our opinion the evidence was sufficient to permit a finding by the jury that such condition did exist and resulted from defendant's acts.

Defendant further argues that this condition existed only at certain times, and it is true that plaintiffs' evidence established that at the time of trial the new well was producing an adequate supply of water. This apparently was due to the fact that defendant did not produce water from Well No. 33 from the time suit was filed to the time of trial.

■■ Generally, if the cause of the injury is abatable the plaintiff cannot recover

for future or prospective damages. In the present case it is clear that the jury awarded prospective damages because at the time of trial the water supply was as adequate as it ever was. The city had temporarily abated the cause. Did this preclude the jury from awarding prospective damages? We think not. Where the cause of the injury results from the operation of a permanent structure controlled by a public corporation, and the right to do the things complained of could be acquired under the power of eminent domain, the cause is deemed to be permanent and non-abatable. 39 Am.Jur. § 131, pages 392, 393. In such a case all future damages may be recovered in one action. Of course the contrary is true where the injury is caused by unauthorized and unnecessary acts (because the right to do such acts cannot be acquired by condemnation) or where the injury can be prevented by the expenditure of labor or money as opposed to the complete cessation of operations, as the defendant did in this case. See Oklahoma City v. West, 155 Okl. 63, 7 P.2d 888.

It might be argued that plaintiffs could enjoin the defendant from future operations, and that therefore the cause is abatable. In Canada v. City of Shawnee, 179 Okl. 53, 64 P.2d 694, this court held that injunction would lie but only an alternative injunction which would be dissolved if the city should tender the issue of eminent domain and proceed to have the damages determined; therefore, the cause cannot be abated by injunction.

In the instant case plaintiffs did not seek an alternative injunction, but proceeded on the theory that they had been deprived of a portion of their water supply and would be so deprived in the future. Defendant never intimated that it would limit its production from Well No. 33. Neither did defendant make an issue of the fact that it had ceased operations. It denied liability on the grounds that it had not injured plaintiffs and that if it had plaintiffs could not complain because the entire water supply was not exhausted. The trial court in Instruction No. 4 instructed the jury on the constitutional provision which prohibits the taking or damaging of private property for public use without just compensation, to which neither party objected. In view of the manner in which this case was presented to the jury and verdict rendered, it is our opinion that the defendant has in practical effect purchased the right to take that portion of plaintiffs' water represented by the difference between the supply necessary to run three faucets at the same time and the supply necessary to run only one faucet, and this without regard to whether defendant ever in fact resumes production from Well No. 33.

In defendant's second proposition it is asserted the trial court abused its discretion in overruling defendant's motion to strike the case from the jury assignment and continuing the case for trial at a later date. In this connection plaintiffs had agreed to furnish defendant, prior to the trial, a calendar on which plaintiffs kept data concerning the water level in their old well after defendant's Well No. 33 had gone into production. Defendant did not receive this calendar until two or three days prior to trial and it was argued that defendant had not had an opportunity to study it. We have examined the evidence offered in support of the motion for continuance and conclude there was no error in the trial court's refusal to grant the continuance.

Defendant's third proposition is to the effect that an owner of land may draw water from beneath the land for the purpose of transporting and selling said water at a distance so long as he does not *exhaust* the entire water supply of the community, causing irreparable injury to his neighbors and their land. Defendant therefore concludes that the trial court erred in instructing the jury in substance that if they believed the defendant extracted large quantities of water from its land and transported the same off its premises for sale, and thereby *lowered* the water beneath plaintiffs' land to their detriment and damage, plaintiffs would be entitled to recover.

Defendant cites in support of its position Canada v. City of Shawnee, supra. In the cited case the proof showed complete exhaustion, but it is not stated in the opinion that complete exhaustion of the supply is a necessary condition of liability. In fact, in discussing the "American rule" or "rule of reasonable use", we quoted from Meeker v. City of East Orange, 77 N.J.L. 623, 74 A. 379, 385, 25 L.R.A.,N.S., 465, as follows:

(The rule of reasonable use) " 'does not prevent the proper user by any landowner of the percolating waters subjacent to his soil in agriculture, manufacturing, irrigation, or otherwise; nor does it prevent any reasonable development of his land by mining or the like, although the underground water of neighboring proprietors may thus be interfered with or diverted, but it does prevent the withdrawal of underground waters for distribution or sale for uses not connected with any beneficial ownership or enjoyment of the land whence they are taken, if it thereby results that the owner of adjacent or neighboring land is *interfered* with in his right to the reasonable user of subsurface water upon his land, or if his wells, springs, or streams are thereby *diminished* in flow, or his land is rendered so arid as to be less valuable for agriculture, pasturage, or other legitimate uses.' " (Emphasis supplied.) [179 Okl. 53, 64 P.2d 694.]

In the Canada case this court further observed that the majority of recent decisions forbid the *harmful* extraction of percolating water for sale at a distance.

As applied to the facts in this case we find no error in the trial court's instructions.

In the fourth proposition defendant urges that improper evidence was admitted for the purpose of establishing the amount of permanent damages, and, secondly, that the court erroneously instructed the jury as to measure of damages for permanent injury to real property.

The evidence of which defendant complains was elicited from a witness who testified that he had never been on plaintiffs' farm but had been in the road around it and was familiar with the market value of this farm. The witness further testified that if the water supply on this farm had been depleted from three faucets to one faucet its value would be reduced from one third to one-half without stating the exact value of the farm after the reduction in water supply. Defendant objected to such testimony on the grounds that the witness had now shown himself sufficiently familiar with the farm to know its value and that the testimony as to the reduced market value was not based upon the true measure of damages, that is, its value before and immediately after the injury. No cases are cited by defendant on these propositions. In our opinion an expert witness need not have walked over a particular tract of property in order to gain some knowledge of its value. The fact that the witness stated the decreased water supply would result in a decrease in value of a certain percent, rather than stating such decreased value in dollars, did not render such testimony incompetent as it involved a mere mathematical calculation. In any event such testimony was cumulative in nature, and no prejudice is shown.

Instruction No. 13 of which defendant complains adequately sets out the measure of damages for permanent injury to real estate as being the difference in value "before and after the damage occurs".

The fifth proposition relates to the alleged recovery of both temporary and permanent damages. This question has been fully treated in an earlier part of this opinion.

The judgment is affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON, HALLEY, WILLIAMS, BLACKBIRD and CARLILE, JJ., concur.