**TRI-STATE SUPPLY COMPANY, a corporation, Plaintiff in Error,**

v.

**Henry Harold ADAMS, Defendant in Error.**

No. 38604.

Supreme Court of Oklahoma.

Feb. 16, 1960.

**752**

Wise & Ivester, Sayre, for plaintiff in error.

Charles M. Wilson, Sayre, for defendant in error.

HALLEY, Justice.

This action was filed in the District Court of Beckham County by Henry Harold Adams, against Tri-State Supply Company, a corporation, to recover damages suffered by plaintiff by injuries to his automobile through the negligence of the defendant in leaving creosote poles to lie upon the traveled portion of a county road in such area that they could not be seen by one driving a car in an easterly direction in time to avoid driving into such poles and causing damages to the car. The damages were alleged to amount to $600.95. The jury returned a verdict for $325, and defendant has appealed. We shall refer to the parties as they appeared in the trial court.

The facts from which this action arose are that on April 30, 1958, Earl Hill, a County Commissioner of Beckham County contracted with the defendant to purchase two truck loads of creosote poles, some 20 or 25 feet long and 40 or 50 in number, to be delivered by defendant at the site of a bridge to be erected on a Beckham County road, and to be used by the County Commissioner in building a new bridge. The poles were shipped to Sayre and defendant had them hauled and unloaded at the top of a hill about 500 feet to the east of where the bridge was to be built.

The first load of poles was unloaded under the supervision of the County Commissioner and stacked on the north side of the road in a safe manner, but the second load was alleged to have been unloaded in a negligent manner in that some of them were left on the north side of the graveled portion of the road where they were dangerous to travelers going east.

About 1:00 a. m. on May 1, 1958, Beatrice Adams, the wife of plaintiff, was driving his car east on the road mentioned and as she came up over the crest of the hill where the poles were dumped she ran into a creosote pole lying in the roadway, and struck the pole with the left front wheel, blowing out the tire and damaging the car in several ways, so that she could not drive further and forcing her to walk to the home of a neighbor who took her back to the damaged car which she left so that those traveling the road would not strike it, and that dam-

ages to the car required repairs in the sum of $245.95, cost of towage in getting it to a repair shop and deprived plaintiff of the use of the car at $5 per day, totaling $135, and other damages, and prayed for damages in the sum of $600.95.

Henry Harold Adams and wife, Beatrice Adams, were husband and wife, and early in March they began to operate a tavern in the Town of Texola for the owner thereof. Mr. Adams had other business that required him to be out of the county, except on weekends, and his wife operated the tavern except on weekends. They lived several miles northeast of Texola and Mrs. Adams drove her husband's car to the tavern about 10:00 a. m. each day and operated it until about 12:30 or 1:00 a. m. when she drove to their home in the country along the road on which the new bridge was about to be built over Buffalo Creek, and it was on this country road that the accident occurred.

The defendant denied that it was negligent and alleged that any damages to plaintiff's car was the result of his negligence, or of the person driving it for him.

It is not contended that Mrs. Adams owned any interest in the car she was driving when it was damaged. The car belonged to her husband. It is not claimed that any other person than Mrs. Adams was present when the accident occurred. This fact makes it clear that the details of the accident were known to her alone. Shortly after the accident she walked alone to the home of a neighbor some 1½ miles from the place of the accident, and he took her to the car to make sure it was in a position where it would not be struck by any other vehicle that might travel that country road. He testified that some of the creosote poles unloaded on the north side of the road were in the traveled section of the road. There is no evidence whatever to show that the last truck load of poles unloaded there had been moved from the hour of 5:30 or 6:00 p. m. on April 30, 1958, and 1:00 to 1:30 a. m. on May 1, 1958, when Mrs. Adams had driven into one of the poles while driving her husband's car in the traveled portion of the road. Mr. Dillingham testified that one pole was in the north rut or lane of the country road when he arrived, just over the crest of the hill, going east.

The evidence showed that the car in question had no right front fender or light but that the left light was in good condition. It was the left front wheel that struck the pole, bent the wheel and blew out the tire. The car had to be towed to a repair shop. There is no contention that the damages to the car, the tow-in charges and the lack of the use of the car made the jury verdict and judgment excessive.

The defendant submits as its first proposition as follows:

"Objection was made by the defendant to Mrs. Adams' testifying on the grounds that being the wife of plaintiff she was disqualified to testify."

Mrs. Adams who was driving her husband's car at the time of the accident was permitted to testify over the objection of defendant. Section 385, 12 O.S.1951, provides that neither the husband nor wife are competent to testify for or against each other:

"* * *. except concerning transactions in which one acted as the agent of the other, * * * or when they are joint parties and have a joint interest in the action; * * *"

Defendant submits in support of this proposition that Mrs. Adams was not acting as the agent of her husband when the accident occurred.

Mrs. Adams testified in part as follows:

"Q. That was your work you were doing over there at Texola? A. What do you mean my work?

"Q. That was your business over there? A. No, it was Mr. Burris's business, we were managing the business. My husband and I were managing the business in Texola for George Burris.

"Q. You and your husband were managing the business? A. That is right. I worked during the week and he worked on the week ends.

*     *     *     *     *     *

"Q. On the day of April 30th, 1958, did you have the possession and control of a 1955 Ford automobile owned by your husband? A. Yes, sir.

"Q. And under what circumstances and for what purpose? A. I used the automobile to go back and forth to work in Texola. I had to have an automobile because there was no other transportation.

"Q. Was he present? A. No, sir. He was working on his job.

"Q. Was he in Oklahoma? A. He was in Texas at the time.

*       *       *       *       *       *

"Q. Did you continue to work after this incident? A. Yes, sir, we had managed the place in Texola, I had to get back and forth to work. The next day I had my baby sitter who lives with me 24 hours a day, she had a pickup truck, sorta a gray pickup truck to drive back and forth to work—I mean she let me drive it until my car got out of the shop, and it was over a month that I had rented her pickup to get back and forth to work, because there was no other transportation."

Defendant claims that the above testimony of the wife clearly shows that she was not the agent of her husband in the operation of the car because she was looking after a business that they were jointly interested in. They cite Abbott v. Nail, 121 Okl. 296, 249 P. 928. In that case the wife was not a party to an action by her husband to recover a proper division of rents from crops grown upon lands sold to another party, the defendant, for the current year. The wife of plaintiff was not a party to the husband's suit but testified that she was interested in his cause of action in that she did the housework while her husband cultivated the crops in dispute. She was permitted to testify, and on appeal this Court ruled that this was error and that she was incompetent to testify as a witness for her husband.

Defendant also cites Oklahoma Transportation Co. v. Owens, 204 Okl. 77, 226 P. 2d 946, in which was involved an action which arose out of a collision between a truck owned and being driven by plaintiff and a passenger bus operated by the defendant. The plaintiff was awarded judgment for $500 and defendant appealed.

The trial court permitted the wife of plaintiff to testify, over the objection of the defendant, that the bus of defendant veered to the left as the two vehicles approached an intersection and that her husband's truck, in which she was riding, kept a straight line down the road they were traveling. This Court reversed the trial court because the wife of the plaintiff was permitted to testify.

The facts in each of the above cases are somewhat different from the facts in the case under consideration. It is true that Mrs. Adams never did testify that she was acting as "agent" for her husband in using his car in going to their home in the country after working until late at night in operating a cafe in Texola for Mr. George Burris, the owner. She said she did the work at the cafe during the week while her husband was on the road in other work, but that he was at home each week end and operated the cafe. At the date of the accident her husband was in Texas, driving his other car.

Plaintiff contends that the absence of Mr. Adams, and his car being in the possession of his wife are not sufficient to make the wife his agent at the time of the accident and resulting damage. Plaintiff cites the case of McDonald v. Cobb, 52 Okl. 581, 153 P. 138, 139, wherein it is said: (quoting from Fisher v. Conway, 21 Kan. 29, 30 Am.Rep. 419)

"When, in the absence of the husband from home, the wife acts in protection of property claimed by him and within the home limits, although without any express direction or agreement, she is acting as his agent, and will be a competent witness in an action by or against him as to what she does and recites."

It was held to the same effect in Knappenberger v. Bice, 146 Okl. 14, 293 P. 781.

Our statute, Section 385, 12 O.S.1951, was adopted from the statutes of Kansas.

There is also cited from 58 Am.Jur., Witnesses, Section 175, p. 124, as follows:

"It is a common-law rule of great antiquity that neither party to a marriage can be a witness in favor of or against the other, in a suit to which the other is a party, or has a direct or immediate interest, save in a few exceptional cases where their testimony is admitted on grounds of necessity. * * *"

As to exceptions to the rule announced in Section 385, 12 O.S.1951, in the case of Springfield Fire & Marine Ins. Co. v. Homewood, 32 Okl. 521, 122 P. 196, 198, 39 L.R.A.,N.S., 1182, it is said:

"* * * Whether Mrs. Homewood's evidence was competent or not cannot affect the decision of the case. However, she testified that she had full control of the car and the contents in the absence of her husband, and her testimony was confined to conditions and transactions existing and occurring in his absence. Her testimony appears to have been competent."

In the same volume of 58 Am.Jur., wherein defendant cites Section 175, plaintiff calls our attention to Section 177, of the same authority as follows:

"Although ordinarily one party to a marriage is absolutely incompetent to testify for or against the other party, exceptions are made to this rule where, from the nature of the case, no remedy would exist without the testimony of the party, as where a crime has been committed by one spouse against the person of the other, where, in an action by one spouse, it is sought to prove the contents of a lost trunk packed by the other, or where a wife kept her husband's books and it is sought to prove the original entries of an account. * * *"

█ We conclude that under the foregoing authorities the court did not err in permitting the wife of plaintiff to testify.

No one else was at the place where and when the car was damaged; her husband was out of the State and she was performing work that required daily attention and which her husband did when he was at home. There is not one word of testimony as to what Mr. Burris paid them or either of them for operating his cafe or to whom he paid it. Mrs. Adams was using her husband's car to enable her to get to and from work on the days when her husband could not be there. If she did not perform these duties as the agent of her husband for whom did she work? Under the evidence before us we are impelled to conclude that she was acting as his agent, for the facts justify that agency was proven by implication from undisputed facts.

Defendant submits as its second proposition the following:

"There is no evidence in this case to support the verdict of the jury charging the defendant herein with negligence. The evidence submitted is purely speculative."

The County Commissioner, Mr. Hill, who had bought the creosoted poles delivered by the truck driver of the defendant, about noon on April 30th, stated it was stacked in an orderly way on the north side of the country road. Mr. Hill did not go with the truck driver and his helper when the second load was delivered about 5:30 or 6:00 p. m. on the same day. The truck driver, Polodskia, testified that this load was unloaded to the west of the first load; that he "undone his chains, drove up beside the other piling and let them roll off." He said the poles were stacked up too high and he could not lift them.

D. C. Cox testified that the plaintiff requested that he go out to the scene of the accident and get his car the next morning after the accident. He testified that the second load of poles were scattered and four or five were in the road bed. Mr. Dillingham who took Mrs. Adams to the scene of the accident also said there was a pole out in the north trail of the road, which was a two lane country road, the pole be-

ing in the north rut going east, and it looked like the pole was further in the road than the others, that it had rolled off the others into the road. Mrs. Adams who drove the car at the time of the accident testified that as she approached the pole she hit she could not see the pole she struck because in going up the hill her left head light shone over the pole. The truck driver who unloaded the second load of poles said he stacked them as he did the first load.

There is not one word of testimony to the effect that any one had seen the poles or driven the road after the poles were unloaded until Mrs. Adams drove into them at about 1:60 A.M. of the night of April 30, 1958.

As stated in Kansas City Southern Ry. Co. v. Haynes, Okl., 320 P.2d 404, 405, the rule is announced in the first paragraph of the syllabus as follows:

> "Probative facts from which negligence and its causal relation to an accident may reasonably be inferred, warrant submission of those issues to the jury."

In Shell Pipe Line Corp. v Curtis, Okl., 287 P.2d 681, the rule is announced in the second paragraph of the syllabus as follows:

> "It is a well settled rule in this state that evidence is sufficient to sustain a judgment if there is any evidence reasonably tending to prove, either directly or immediately, or by permissive inference, the essential facts to sustain the verdict and judgment rendered thereon."

This rule is also announced in City of Enid v. Crow, Okl., 316 P.2d 834.

There is competent evidence to support the allegation of negligence on the part of the defendant and the court did not err in submitting the issue to the jury. The judgment of the trial court is affirmed.

The plaintiff prays for judgment on supersedeas bond against the surety thereon, the Western Casualty and Surety Company, and judgment in favor of plaintiff is hereby rendered against said surety, to be effective only upon the failure of the defendant to satisfy promptly the judgment rendered in favor of the plaintiff.

WILLIAMS, V. C. J., and WELCH, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

DAVISON, C. J., concurs in result.

BLACKBIRD, J., dissents.