## RAY *et al.* v. NAVARRE *et al.*

No. 6724.   Opinion Filed March 16, 1915.

Rehearing Denied May 18, 1915.

(147 Pac. 1019.)

1.   DAMAGES—Exemplary Damages.   Section 2851, Rev. Laws 1910, provides that in an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to actual damages, may give damages for the sake of example, and by way of punishing the defendant.

2.   REPLEVIN—Exemplary Damages—Right to Recover.   The defendants went upon the premises of the plaintiffs accompanied by several persons, among them an armed deputy sheriff, without any legal process, and by force and threats of violence and against the consent of the plaintiffs took and carried away certain personal property belonging to them. Held, that in an action of replevin a verdict for the return of said property, or the value thereof, and assessing exemplary damages for the sake of example and by way of punishing the defendants, is proper.

3.   REPLEVIN—Scope of Relief—Recovery of Damages.   In an action of replevin, where the defendants retain the property, the measure of damages is ordinarily the value of the property and damages for the detention, which is usually the interest on the value from the time of the taking or detention; but when the

Syllabus.

taking or detention, or both, are attended with circumstances of aggravation, the plaintiffs are entitled to more than compensatory damages, and they should be allowed their full measure of redress in the action of replevin, without compelling them to resort to an action to repossess themselves of the property unlawfully taken and to another for their damages.

4. **CHATTEL MORTGAGES—Breach of Condition—Possession of Property—Rights.** Although a chattel mortgage provides that the mortgagee, under certain conditions, may go upon the premises of the mortgagor and take possession of the mortgaged property, yet neither the mortgagee nor any one in his behalf has the right to take possession of such goods by force and threats of violence and without the consent of the mortgagor. The law will not permit a mortgagee to commit or threaten a breach of the peace and then to justify his conduct by a trial of the right of property.

5. **REPLEVIN—Defense—Indebtedness of Owner.** Property taken forcibly and without the consent of the owner may be recovered back, and the fact that the owner thereof was indebted to the wrongdoer is not a defense.

6. **SAME—Exclusion of Evidence—Want of Malice.** In such circumstances it is not error to exclude evidence tending to show that at the time of the taking the plaintiffs were indebted to defendants, offered upon the theory that such evidence tends to show want of malice in the taking.

7. **REPLEVIN—Verdict—Exemplary Damages—When Recoverable.** A verdict, assessing damages for the plaintiff in an action of replevin, will not be set aside on the ground of the excessiveness of the damages, where the proceeding on the part of the defendant is vexatious and oppressive. The jury in such cases is authorized to give smart money.

8. **PLEADING — Witnesses — Competency — Husband and Wife — Amended Petition.** Record examined, and held, that the action of the court in refusing to strike the fifth amended petition of the plaintiffs from the files was not error. Held, further, that Julia Navarre was not an incompetent witness under section 5050, Rev. Laws 1910, she being a joint party with her husband and having a joint interest in the action; and held, further, that the instructions given by the trial court, taken as a whole, state the law applicable to the case, upon the theory upon which it was tried, with reasonable fullness and substantial accuracy.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*

*W. R. Taylor, Judge.*

Replevin by Louis Navarre and others against Thomas H. Ray and another, doing business as Ray &

Lanyon. Judgment for plaintiffs, and defendants bring error. Affirmed.

*Grant Stanley,* for plaintiffs in error.

*Jas. S. Twyford* and *H. R. Winn,* for defendants in error.

KANE, C. J. This was an action in replevin, commenced by the defendants in error, plaintiffs below, against the plaintiffs in error, defendants below. The fifth amended petition upon which the cause was tried alleged, in effect, that the defendants unlawfully, oppressively, and by force and threats took and carried away certain personal property belonging to the plaintiffs; the prayer thereof being:

"That the plaintiffs have judgment against the defendants for the return of the property involved or the value of the same and actual damages in the sum of $2,475 for the unlawful detention thereof, and $1,000 exemplary damages."

The answer was to the effect that the defendants took possession of said goods and chattels under and by virtue of the terms of a chattel mortgage executed to secure the payment of a note for $600, with interest and an attorney's fee, in favor of one A. S. Garland, and that said note and mortgage were duly and regularly assigned to said defendants and were past due and unpaid at the time of the commencement of said action in replevin, "wherefore defendants pray judgment for said sum of $600 and for $50 attorney's fees, and costs of suit, and that an order of sale issue out of this court ordering and directing the sale of said property, and that the proceeds of the said sale be applied upon the payment of said judgment, attorney's fees, and costs of this suit."

To this answer the plaintiffs filed a reply, to the effect that if said defendants purchased said note and mortgage, they did so after maturity thereof, and subject

to all defenses as against the original payees; that the note and mortgage were usurious contracts to the extent of $100 at least, and that said plaintiffs had also made a certain partial payment on said note, for which sums they are entitled to credit on said note; that at the time of the unlawful taking of said property as set forth in plaintiffs' amended petition, the defendants were not the owners and holders of said note and mortgage sued on by them in this action, and they well knew that they had no right to said property sought to be recovered therein, and well knew that they were not the owners and holders of said note and mortgage; that said defendants, at a time before the alleged transfer and delivery to them of the note and mortgage sued on and set up in their answer and cross-petition, took the property unlawfully and wrongfully from these plaintiffs, as stated in their fifth amended petition, and, as alleged assignees of said note and mortgage securing the same, have claimed and continue to claim and detain and convert to their own use the said property sought to be replevined, and by reason of said wrongful conversion thereof under the provisions of section 3843, Rev. Laws 1910, the lien created by the terms of said mortgage has been extinguished, the mortgage made void and unenforceable, and the defendants are estopped from asserting and enforcing any of the terms and conditions of the same; that the note and mortgage set up in defendants' answer and cross-petition were not sold, assigned, and delivered to them until a time after they had wrongfully and unlawfully taken from possession of the plaintiffs the said described property and in the manner set forth in the plaintiffs' fifth amended petition, and plaintiffs state that at the time of the taking of said property by the defendants in the manner aforesaid, their damage caused by reason of said unlawful, wrongful, malicious, and oppressive acts of the defendants in the taking and detention of said property was in excess of any

amount yet due on said note, wherefore plaintiffs pray that the defendants be estopped to set up the note and mortgage, or any claim under them, as a defense to plaintiffs' action herein, and that they have judgment as prayed for in their fifth amended petition.   Upon trial to a jury a verdict was returned wherein the jury found "for the plaintiffs and against the defendants in the sum of $269, and that the plaintiffs were entitled to the return of the following described property or its value, which we find to be as follows."

Then follows a list of the property involved, with the value thereof, as found by the jury, placed opposite each item.   Afterward the court entered a judgment in conformity with the verdict, to reverse which this proceeding in error was commenced.

Counsel for plaintiffs in error, in his assignments of error, has set forth a great many grounds why, in his opinion, the judgment of the court below should be reversed; but in his brief he summarizes his grounds of complaint to the following effect:   First.   The court erred in overruling a motion of the plaintiffs in error for a judgment in their favor notwithstanding the verdict of the jury, for the reason that the evidence adduced at the trial is not sufficient to support the verdict returned.   Second. The court erred in rejecting a certain "offer to prove" made by said defendants.   Third.   Error in the assessment of the amount of recovery; the same being too large for the plaintiffs.   Fourth.   The court erred in overruling the motion of the plaintiffs in error to strike the fifth amended petition filed in said cause by defendants in error from the files.   Fifth.   The court erred in refusing to sustain the motion of the plaintiffs in error to strike from the consideration of the jury all the testimony of the witness Julia Navarre, for the reason that it appears that the said Julia Navarre was an incompetent witness, being the wife

of said Louis Navarre, the only real party in interest in the said cause. Sixth. The court erred in refusing to give certain instructions requested by the defendants and in giving other instructions upon his own motion and as requested by counsel for defendants in error.

The first contention of counsel for plaintiffs in error is to the effect that, even assuming that the defendants were not the owners of the note and chattel mortgage at the time they seized the property, they undoubtedly were the owners thereof at the time the action in replevin was commenced, "and in a suit in replevin the right to possession at the time of the commencement of the suit controls, and replevin cannot be maintained unless that right was in the plaintiffs below [defendants in error] on the date that it is unquestionably shown that the plaintiffs in error were entitled to that possession at the time."

It is urged that this contention is sustained by the case of *McMillan Hdw. Co. v. Ross*, 24 Okla. 696, 104 Pac. 343, wherein it was held that:

"Damages to a defendant in a replevin suit are to compensate him for the loss he has sustained by being wrongfully deprived of his property, and their award involves a prior finding that he is entitled to its possession, and he is never entitled to damages unless he shows himself entitled to the possession of the property at the time the suit was commenced."

We think the rule invoked is not applicable to the situation presented by the record before us. In the case at bar there was evidence adduced at the trial tending to show that at about 6 o'clock in the morning of the 16th day of December, 1912, R. J. Lanyon, one of the defendants herein, accompanied by one Miller, an armed deputy sheriff, without any legal process, and one Benepee, came upon the premises of the plaintiffs, where the property in controversy was kept, and by means of force, threats, and a display of firearms, took and drove away said property

over the protests of said plaintiffs; that at about noon of the same day the firm of Ray & Lanyon became the owners of the note and mortgage relied upon to entitle them to the possession of the property taken at the time of the commencement of the action in replevin. As the jury found in favor of the plaintiffs, and there is evidence reasonably tending to support their finding, the record must be examined upon the hypothesis that the foregoing facts are established.

In *Murphey v. Virgin,* 47 Neb. 692, 66 N. W. 652, Murphey, who claimed that Mrs. Virgin was indebted to him, forcibly took the amount of the alleged indebtedness from a reticule in which Mrs. Virgin was carrying a sum of money, at the same time threatening her with a revolver. Mrs. Virgin afterward commenced an action against Murphey for conversion. Murphey requested an instruction to the effect that if the money taken was due him from the plaintiff, she could not recover, although it was taken against her consent. The court said:

"This doctrine could not for a minute be tolerated. A man has no right to resort to robbery to collect his claims."

The principle applied is stated in the syllabus as follows:

"Money taken forcibly, and without the consent of the owner, may be recovered back, and the fact that the owner was indebted to the wrongdoer in an amount as great as the sum taken is no defense."

In the case at bar, if we assume that defendants were not the owners of the note and mortgage at the time they took possession of the personal property of the plaintiffs, their conduct in going upon the premises of the mortgagors accompanied by an armed deputy sheriff, who had no legal process, and others, and taking possession of the mortgaged property by force, constituted them trespassers, and the subsequent purchase of the note and mortgage

could not serve as a justification for their former wrongful acts.

The discussion of the next assignment of error will make the analogy between this case and *Murphey v. Virgin, supra,* more apparent. Upon trial the defendants offered to prove that at the time of the seizure of the property the plaintiffs were indebted to them in the sum of $75, which indebtedness had been reduced to a judgment; that there was sufficient property covered by the mortgage to satisfy both claims; that they knew "that the plaintiffs in the case were disposing of all the property which wasn't exempt, covered with the mortgage filed thereon, to wit, more than $700 worth of cotton and a large amount of corn and other assets, which were included in the mortgage, and which but for the mortgage would have been subject to execution." Counsel says that this offer was made for the purpose of showing "a reason for the taking of the property and to show that it was not maliciously done. * * * Surely, the court erred in excluding that testimony."

We cannot agree with counsel that it was error to reject this offer to prove. It is conceded that the chattel mortgage constituted a legal barrier to the enforcement of the $75 judgment by execution against the property involved, but it is insisted the evidence excluded was competent to show that the taking was not malicious. From the authority cited it is clear that the evidence offered did not tend to establish a defense against the unlawful taking, and we are unable to see how it would tend to show want of malice. Moreover, if we assume that the defendants were the owners of the note and mortgage at the time they made the seizure, still they were not at liberty to compel the performance of its terms by force, and therefore they would be in no better situation.

Discussing the principle applicable to such a situation, the Supreme Court of Washington, in *McClellan v. Gaston,* 18 Wash. 472, 51 Pac. 1062, says:

"Because a party to a contract violates his contract and refuses to do what he agreed to do is no reason why the other party to the contract should compel the performance of the contract by force. The adoption of such a rule would lead to a breach of the peace, and it is never the policy of the law to encourage a breach of the peace. The right to an enforcement of this part of the contract must, in the absence of a consent on the part of the mortgagor, be enforced by due process of law the same as any other contract."

In support of this proposition the court quotes section 705, Jones' Chattel Mortgages (4th Ed.) as follows:

"Upon default the mortgagee is entitled to take peaceable possession without a prior demand for the payment of the debt. But the law will not allow him to commit or to threaten a breach of the peace and then to justify his conduct by a trial of the right of the property. Instead of using force, the mortgagee must resort to his legal remedies. The mortgagee becomes a trespasser by going upon the premises of the mortgagor, accompanied by a deputy sheriff who has no legal process, but claims to act *colore officii,* and taking possession without the active resistance of the mortgagor. To obtain possession under such a show and pretense of authority is to trifle with the obedience of citizens to the law and its officers."

In further support of the first assignment of error, it is urged that:

"On any theory of the case, no actual damages were shown in the taking or in the possession of the property up to the time the plaintiffs in error had the right to the possession of it. And in order for the defendants in error to be entitled to any damages, actual damages must have been proved. No private individual is entitled to sue for the purpose of punishing a wrong, unless coupled with the wrong is some actual damage to himself."

Whilst the verdict returned by the jury is general in form, this contention is based upon the following colloquy between the court and jury immediately upon the return of their verdict:

"The Court: Do I understand you in this verdict deducted from the punitive damages you found the amount of the note and interest and attorney's fees?

"The Foreman: Yes, sir; we deducted that from the damages.

"The Court: You understand that; that is the understanding of the entire jury?

"The Jurors: Yes, sir.

"The Court: The understanding of the entire jury is that there are $1,000 punitive damages, and from that $1,000 they have deducted the $600 note and 10 per cent. interest thereon from December 10, 1912, to April 22, 1914, and added to that $50 attorney's fees, leaving a balance due plaintiff of $269?

"The Jurors: Yes, sir.

"The Court: Very well, the clerk may enter and record the verdict, and the jury may be discharged from further consideration of this case, and excused."

Whilst it is not entirely clear that the jury intended the entire $1,000 damages allowed should be assessed as exemplary damages, yet, assuming that the verdict amounts to a verdict for the return of the property, or its value, and $1,000 as exemplary damages, that sort of a verdict seems to be permissible by statute in this class of cases.

Section 4807, Rev. Laws 1910, provides that In an action to recover the possession of personal property judgment for the plaintiff may be for the possession, or for the recovery of possession, or the value thereof, in case a delivery cannot be had, and for damages for the detention. And section 2851, Rev. Laws 1910, provides:

"In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages

for the sake of example, and by way of punishing the defendant."

California seems to have a statute of identical import. *Arzaga v. Villalba*, 85 Cal. 191, 24 Pac. 656, was an action for the recovery of personal property and damages for its detention. Plaintiff obtained judgment for the possession of the property, or its value, in the sum of $350, and for the sum of $530 damages. The court, in sustaining the validity of the verdict of the jury and the judgment rendered therein, said:

"The defendant contends that there is no evidence that justifies the award of damages. And it is quite true that there is no evidence of actual damage (the property itself having been returned) beyond a small sum expended in pursuit of the property. But 'in any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant.' Civil Code, section 3294. And we think that the circumstances of the case justified the award which the jury made."

Further discussing the same question, it was said:

"The defendant contends that the court erred in instructing the jury that the action was for the conversion of personal property, and that in such an action they could give exemplary damages if they believed that there was malice, etc. The argument is that this was not an action for the conversion of personal property, but was for the recovery of the property itself. But whatever may be the distinction between the two actions, it is not important here; for the provision of the Civil Code above quoted does not confine the recovery of exemplary damages to actions for the conversion of the property. It says, 'In an action for the breach of an obligation not arising from contract,' which is certainly broad enough to include both the actions above referred to."

And this seems to be the rule independent of statute. We find it stated in 34 Cyc. 1567, as follows:

"Thus it is very generally held that if the defendant seizes the property without a *bona fide* claim or right, in bad faith, or under circumstances of aggravation or outrage, this would furnish a case for the exercise of the discretion of the jury in the allowance of exemplary or punitive damages, as in the case of a willful or malicious trespass; and, on the other hand, plaintiff is entitled to damages of this character where there have been peculiar circumstances of outrage, oppression, and wrong in the taking or detention of the property."

In *McDonald v. Scaife et al.*, 11 Pa. 381, 51 Am. Dec. 556, the rule is stated as follows:

"In an action of replevin, where the defendant retains the property, the measure of damages is ordinarily the value of the property, and damages for the detention, which is usually the interest on the value from the time of taking. * * * But though this is the general, yet it is not the universal, rule, for circumstances may attend the taking and detention which will justify the jury in giving exemplary damages. The exceptions are as well settled as the rule itself. Thus, when the taking or detention, or both, are attended with circumstances of aggravation, the party is entitled in some form, as is conceded, to more than compensatory damages, and why should he not have his full measure of redress in the action of replevin without compelling him to resort to an action to repossess himself of his goods, unlawfully taken, and to another for his damages?"

Other cases to the same effect are *Brizsee v. Maybee*, 21 Wend. (N. Y.) 144; *Cable v. Dakin*, 20 Wend. (N. Y.) 172; *McCabe v. Morehead*, 1 Watts & S. (Pa.) 513; *Mayberry v. Cliffe*, 7 Cold. (Tenn.) 117; *Wiley v. McGrath*, 194 Pa. 493, 45 Atl. 331, 75 Am. St. Rep. 709.

In the case at bar, the taking being wrongful and attended with circumstances of aggravation which entitled the plaintiffs, not only to compensatory, but exemplary, damages as well, the defendants are in no position to complain if the jury finds that a return of the property, or

the value thereof, will fully compensate the plaintiffs for the actual damages sustained by them, and in addition thereto "gives damages for the sake of example and by way of punishing the defendant."

Upon the third assignment of error, we are not prepared to say that it appears that the amount of the verdict in favor of the plaintiffs was the result of passion or prejudice on the part of the jury. In cases like this a certain degree of heat is unavoidable. In the instant case there is nothing in the record to indicate undue passsion or prejudice on the part of the jury, except the size of the verdict itself. Whilst the verdict is large—perhaps too large, we might say if called upon to pass upon the question as jurors—yet there were a great many circumstances of aggravation and oppression connected with the taking of the property tending to show an entire absence on the part of the defendants of all regard for the rights of the plaintiffs and a contempt for law and order wholly indefensible. As Mr. Jones says in the section of his work on Chattel Mortgages heretofore quoted:

"To obtain possession under such a show and pretense of authority is to trifle with obedience of citizens to the law and its officers."

The mere fact that one is a debtor does not put him beyond the pale and protection of the law. Whilst he may be so unfortunate as to be unable to meet his obligations as they fall due, the law will not permit his creditor to compel the performance of his contract by force. The rule seems to be that a verdict assessing damages for plaintiff in an action of replevin will not be set aside on the ground of the excessiveness of the damages allowed where the proceeding on the part of the defendant is vexatious and oppressive. The jury in such a case is authorized to give smart money. *Cable et al. v. Dakin et al., supra.*

The next assignment of error is predicated upon the theory that the fifth amended petition introduces an entirely new cause of action, and that the action of the court in overruling the motion to strike runs counter to the rule that an amendment to a petition cannot be allowed which introduces a new cause of action.  It is probably true that the fifth amended petition substantially changes the claim of the plaintiffs as stated in their fourth amended petition; but as the fourth and fifth amended petitions are the only ones incorporated in the record, we are unable to say whether this is true as to any of the other petitions.  It may be that the fifth amended petition does not change substantially the claims sought to be presented by the first, second, or third amended petitions.  Indeed the record indicates that the fifth amended petition must have been in harmony with one of the former petitions not incorporated in the record, for we find the defendants asked and were granted leave to refile as an answer to the fifth amended petition an answer and cross-petition which they had previously filed to one of the petitions not incorporated in the case-made.  In such circumstances we are unable to say whether the fifth amended petition changes substantially the original claim or defense.  Section 4790, Rev. Laws 1910, provides:

"The court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party, or correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or conform the pleading or proceeding to the facts proved, when such amendment does not change substantially the claim or defense.  *  *  *"

We do no believe that the trial court abused the broad discretion in regard to amendment of pleadings vested in it by the foregoing statute:

The next assignment of error is predicated upon the theory that Julia Navarre was an incompetent witness by virtue of section 5050, Rev. Laws 1910, which provides:

"The following persons shall be incompetent to testify: * * * Husband and wife, for or against each other, except concerning transactions in which one acted as the agent of the other, or when they are joint parties and have a joint interest in the action."

Julia Navarre signed the note and mortgage involved herein, and is a joint party with her husband to the present proceeding, and the verdict of the jury and the judgment of the court are also joint in form. The ground upon which it is contended her evidence should be stricken is that it discloses that she has not a joint interest with her husband in the property involved. The motion to strike her evidence was made after Julia Navarre had been examined and cross-examined at great length upon that point. The court below, upon conflicting evidence, found that she had such an interest in the subject of the action as entitled her to testify, and the jury found that she had such a joint interest in the action as entitled her to a joint verdict for the return of the property, and damages for its detention. In such circumstances this court would not be justified in holding that she did not have a joint interest in the action, and was therefore incompetent to testify.

On the assignments touching errors of the trial court in refusing to give certain instructions requested by the defendants and in giving other instructions over their objections, it is sufficient to say that the court has examined the instructions given by the court below, and is of the opinion that as a whole they state the law applicable to the case upon the theory upon which it was tried with reasonable fullness and substantial accuracy.

For the reasons stated, the judgment of the court below is affirmed.

All the Justices concur.