## ROGERS v. BENFORD.

No. 10037—Opinion Filed Oct. 4, 1921.

Rehearing Denied Nov. 1, 1921.

(Syllabus.)

1. **Trial—Conversion of Chattels by Mortgagee—Demurrer to Evidence — Determination.**

In an action against a chattel mortgagee for wrongful conversion of mortgaged property, it is not error to overrule a demurrer to the evidence where it strongly tends to show the taking and selling of the mortgaged property was wrongful.

2. **New Trial—Right to—Absence of Prejudicial Error.**

In an action by mortgagor against mortgagee for wrongful conversion of mortgaged property, where there are no substantial errors committed in the admission or rejection of testimony, nor in other proceedings, and the issues made by the pleadings are properly submitted to the jury, and no substantial errors as to any part of the proceedings are made to appear, it is not error to overrule motion for new trial.

3. **Chattel Mortgages — Conversion — Instructions — Effect of Undisputed Facts.**

In an action for wrongful conversion of mortgaged property, where the undisputed facts show, as a matter of law, that the taking of the property and conversion of same were wrongful, it is not error for the court to instruct the jury that, as a matter of law, the taking was wrongful, and that the only thing left for the jury to determine was the extent of plaintiff's damages, if any, and the amount, if anything, he should recover.

4. **Chattel Mortgages—Conversion—Wrongful Taking of Chattels by Mortgagee.**

Where the undisputed facts show that the taking and conversion of mortgaged property were done under the following circumstances: First, by refusing to accept any payment unless all was paid; second, by informing mortgagor that he had better turn the property all over to him, mortga-

gee, and get out of it the best he could; third, by informing the mortgagor that if he did not turn all of the property over to mortgagee, he would start criminal proceedings; fourth, by starting criminal proceedings and having mortgagor arrested and put in jail for an alleged criminal charge, which there was evidence to sustain; fifth, by taking possession of the property under a void order of replevin, and, in the meantime, selling such property and appropriating the proceeds to the mortgagee's own benefit—such circumstances constitute a wrongful conversion.

## 5. Same—Exemplary Damages.

In an action for wrongful conversion the mortgagor may recover exemplary damages for such wrongful conversion, in addition to the actual damages sustained.

## 6. Appeal and Error — Review—Verdict—Damages for Conversion and Malicious Prosecution.

Where there are two causes of action, one for damages for wrongful conversion and one for damages for malicious prosecution and imprisonment, and the evidence in each cause of action is sufficient to sustain the verdict, the judgment will not be reversed, although the verdict be general.

Error from District Court, Lincoln County; Chas. B. Wilson, Jr., Judge.

Action by J. A. Benford against George B. Rogers for damages for wrongful conversion and malicious prosecution. Judgment for plaintiff, and defendant brings error. Affirmed.

Jarrett & Speakman, for plaintiff in error.

Thos. G. Andrews and Emery A. Foster, for defendant in error.

HARRISON, C. J. This was an action by J. A. Benford against George B. Rogers for wrongful conversion of property, consisting of a cotton crop and a span of mules, and for damages for malicious prosecution. The action grew out of the following circumstances: In the spring of 1916, Rogers owned a mule which he proposed selling to Benford. Benford was a negro farmer. He, in substance, told Rogers that he couldn't buy the mule unless he could buy two, and would be compelled to buy both of them on time. They finally agreed upon a mule belonging to one Ellis. Rogers bought the mule, or at least the mule was obtained on the strength of Benford giving his note for $85 and Rogers signing same as security. This note was made due October 1, 1916. Rogers then sold both mules to Benford, taking Benford's note for $165, and taking a mortgage on the two mules and Benford's cotton crop for that year as security. Benford thus seems to have been bound for the price of three mules and had bought only two. He was on the Rogers note for $165, the price of both mules, and had both mules and his cotton crop mortgaged to secure the note to Rogers. When the notes became due they were not paid, but a few days before the mortgage note for $165 was due, Rogers went to Benford and demanded payment. Benford, in substance, told Rogers that he had not picked his cotton, but woud pick it and sell it and apply it on the note as fast as he got the money; also, that some other cotton coming to Benford from a subtenant had been picked and Benford would apply the proceeds of that toward paying the interest on the notes. To this Rogers replied: "If you do not have it all, you need not pay none." Subsequent to this, and possibly on the same day, Benford went into an attorney's office where Rogers was, and some further conversation was had between them, in which Benford testified that Rogers said to him: "You better turn everything you've got over to me and get out of it the best you can. * * * If you don't turn it over, I will start proceedings right away," and in answer to the further question of his attorney—

"Q. What else did he say?

"A. He didn't look right and I got away from him."

On the following day Rogers procured an order of replevin from the justice court, and from the same justice procured a warrant for Benford's arrest. Benford was arrested and taken to Chandler and placed in jail, and Rogers took possession of Benford's mules and cotton crop under the order of replevin, and later had the mules and cotton sold at public auction and appropriated the proceeds to his own benefit. A trial was had, in the same justice court, of the criminal charge against Benford for selling mortgaged property, and Benford discharged, the facts disclosing that he had not sold any mortgaged property. He was also charged with removing mortgaged property, and discharged from that on the ground that he had not removed any mortgaged property. Later Benford employed attorneys to set aside the judgment in the replevin action for lack of jurisdiction of the justice of the peace. The justice of the peace set aside the judgment on the ground that the amount for which judgment had been rendered was $240, and, therefore, beyond the jurisdiction of the justice court. In December, 1916, Benford filed this action for damages for the wrongful conversion of his property and for malicious pros-

ecution, and obtained a verdict and judgment for $475. From the judgment upon such verdict, this appeal is prosecuted.

Three propositions are presented for reversal: First, that the court erred in overruling the demurrer to the evidence; second, that the court erred in overruling motion for new trial; third, that the court erred in giving the following instructions:

"The evidence in the case relating to plaintiff's first cause of action admits of no other conclusion than that the defendant's action in taking and selling the cotton and mules was wrongful, and there remains nothing in that cause of action for you to determine except the extent of plaintiff's damages and the amount, if anything, he should recover.

"It will be your duty to determine from the evidence in the case the extent of plaintiff's damages by reason of the defendant having taken and sold his said property without authority and in arriving at that determination you may take into consideration the value of each item of such property at any time between the date of the taking thereof and this date.

"After arriving at a determination of this amount you should then determine from the evidence in the case what amount, if any, remained due and unpaid to the defendant on account of the $165 note involved in the transaction at the time the property was taken, including interest at ten per cent. from February 23d, 1916, and you should then deduct that amount from the amount which you determine to be the extent of plaintiff's damages by reason of the wrongful taking of said property, and after making such deduction it will be your duty to return a verdict for the difference, if any.

"If you should find that there is no difference, it will then be your duty to return a general verdict for the plaintiff and against the defendant without fixing any amount of recovery."

The first proposition is directed at the insufficiency of the evidence to show a wrongful conversion of the property. This contention cannot be sustained, as the record shows sufficient evidence to warrant the conclusion that the property was taken possession of wrongfully, first, by telling Benford in the attorney's office that he would start proceedings against him unless Benford turned all of his property over to him; second, by starting proceedings against Benford and having him arrested and thrown in jail upon a complaint which there was no evidence to support; and, third, by procuring, from the justice court, an order of replevin, which was void for lack of jurisdiction. Property taken possession of under such circumstances cannot be said to be rightfully taken. Hence, the court did not err in overruling the demurrer to the evidence.

The second and third propositions may be disposed of together. As to the instructions complained of, we perceive no error, for, as the court says, the evidence in the case admits of no other conclusion than that the taking and selling of the cotton and mules was wrongful. Neither do we perceive error in the method pointed out in the court's instruction for ascertaining the amount of damages sustained by Benford, and how such damage, if found, should be applied. It is argued by plaintiff in error that the mortgage was a valid and subsisting mortgage under the uncontradicted evidence, and that there was no fraud practiced by the defendant or breach of peace committed by him in obtaining possession of the cotton and mules. This contention is not borne out by the record. True, there was a valid and subsisting mortgage, but Rogers obtained possession of the property as follows: First, by refusing to accept any payment unless all was paid; second, by informing Benford that he had better turn the property all over to him and get out of it the best he could; and third, by further informing him, Benford, that if he didn't turn all of it over to him, Rogers, he would start proceedings; fourth, by starting proceedings and having Benford arrested and thrown in jail, thereby preventing him from picking his cotton and paying off the note; and, fifth, by taking possession of the property under a void order of replevin while Benford was in jail, and under such proceedings selling the property and appropriating the proceeds to his own benefit. The fact of selling and appropriating to his own benefit constituted conversion, and the circumstances under which it was done constituted wrongful conversion. Therefore, we cannot hold that the court erred in the instructions complained of.

There is some controversy over the question whether the terms of the mortgage should be construed to include the portion of cotton which Benford was to get from a subtenant; Benford contending that the mortgage did not cover that cotton, Rogers contending that it did; but, under the circumstances of the taking possession, this question is immaterial, for, as disclosed by the record, all of the property was wrongfully taken and converted. Objection is also made to the form of the verdict; plaintiff in error contending that, there being two

distinct causes of action and the verdict being general, this court will be unable to tell what amount of damages was found to have been sustained under either cause of action and that the judgment should be reversed, citing St. Louis & S. F. Ry. Co. v. Farmers Union Gin Co., 34 Okla. 270, 125 Pac. 894. True there were two causes of action in said case, as in this case, but in one cause of action in said case there were improper elements of damage submitted to the jury, and this court, being unable to determine whether the verdict was based solely upon such improper elements of damage, reversed and remanded the case for further trial upon the proper elements of damage, and suggesting in the opinion that the better practice would be for the verdict to contain separate findings as to damages in each cause of action: but in the case at bar there were no improper elements of damage submitted to the jury, and although there were two causes of action, one for damages sustained by reason of the wrongful conversion of property, the other for damages sustained by reason of malicious prosecution, the court properly instructed the jury both as to the elements of damage for wrongful conversion and as to the elements of damage for malicious prosecution, and, in our opinion, the evidence was sufficient to sustain the verdict in either cause of action. Therefore, had the jury found damages in the sum of $475 in either cause of action, the court would not set it aside for not being supported by sufficient evidence. There was no objection made to the instructions on the question of damages for malicious prosecution, but we have examined the instructions and find no substantial error in this regard, nor do we find error in the instructions on damages for wrongful conversion. Hence, the form of the verdict is immaterial in this case, for we could not hold it to be excessive if based altogether upon the damages from either cause of action.

In an action of this character the jury is permitted to assess exemplary damages in addition to the actual damages sustained. Ray et al. v. Navarre, 47 Okla. 439, 147 Pac. 1019. In such case it was held:

"* * * That in an action of replevin a verdict for the return of said property, or the value thereof, and assessing exemplary damages for the sake of example and by way of punishing the defendants, is proper. * * * Although a chattel mortgage provides that the mortgagee, under certain condition, may go upon the premises of the mortgagor and take possession of the mortgaged property, yet neither the mortgagee nor any one in his behalf has the right to take possession of such goods by force and threats of violence and without the consent of the mortgagor. The law will not permit a mortgagee to commit or threaten a breach of the peace, and then to justify his conduct by a trial of the right of property. * * * A verdict, assessing damages for the plaintiff in an action of replevin, will not be set aside on the ground of the excessiveness of the damages, where the proceeding on the part of the defendant is vexatious and oppressive. The jury in such cases is authorized to give smart money."

On the other hand, if the verdict was based solely upon the damages sustained by reason of malicious prosecution, we should not hold the verdict to be excessive. It is contended by plaintiff in error that he acted in good faith and upon the advice of attorneys in having Benford prosecuted. The record does not bear out this contention. A trial of the criminal charges disclosed that Benford had not sold any mortgaged property, nor removed any mortgaged property, and was, therefore, arrested on a false complaint.

The circumstances of the case, taken as a whole, were sufficient to warrant the jury in believing that Rogers had conceived the idea of prosecuting Benford as a means of getting possession of his property, and had resorted to the criminal laws of the state as an agency for enforcing collection of a debt.

Upon the whole, we do not think the verdict excessive, and find no substantial error in the record.

The judgment is affirmed.

KANE. JOHNSON. MILLER. and ELTING. JJ.. concur.