Cecil DAVIDSON, d/b/a Professional Marble Company, Appellee,

v.

FIRST BANK AND TRUST COMPANY, YALE, Oklahoma and Hugh Jones, Appellants.

No. 48647.

Supreme Court of Oklahoma.

Nov. 2, 1976.

Opinion Modified, Rehearing Denied Feb. 7, 1977.

Thomas, Hert & Anderson, Stillwater, for appellee.

D. Warren Crisjohn, Yale, for appellants.

DOOLIN, Justice.

This is a suit against First Bank and Trust Company, Yale, Oklahoma and Hugh Jones its president, hereinafter referred to collectively as Bank. The problem involves an appeal from a $20,000 punitive damage award against Bank for conversion of marble making equipment repossessed by self-help under provisions of the Uniform Commercial Code, 12A O.S.1971 § 9–503.

A debtor-creditor relationship existed between Davidson, (plaintiff appellee) and Bank for a number of years prior to this action. At the suggestion of Bank, Davidson contacted a man named Sneed to work with him to enable his marble making business to operate in a profitable manner. At this time Davidson executed a promissory note and security agreement in favor of Bank which provided for monthly payments with a final balloon payment at the end of the year.

Testimony indicated that in November of 1972, Bank, because of differences between Davidson and Sneed, attempted to foreclose before the note was in default. The problems were resolved however, and Bank refinanced the note in a similar manner, payable by Davidson only.

The situation between Davidson and Sneed did not improve and they had a falling out in the early fall of 1973. Sneed removed a portion of the marble making equipment from Davidson's shop,[1] some of which he claimed to own, and opened a competitive marble manufacturing business across the street.[2] The volume of equipment taken is in dispute, but Sneed admits

"borrowing" with Bank's permission, the two major pieces of equipment owned by Davidson. Because of the loss of this equipment, Davidson was effectively put out of business and he defaulted on the last balloon payment due November 15, 1973.

Bank obtained entry to the shop through Sneed and on November 21, 1973 took possession of the remaining property secured by the agreement. On November 21, 1973, Bank executed its "Notice of Sale under Security" listing items to be sold at public auction on December 6, 1973 at 10:00 A.M. The notice did not cover all items of property listed on the security agreement. Although the secured items were unique and there was no ready market for marble making equipment in Yale, Bank posted only three notices of sale in Yale. This was the extent of its commercially reasonable advertisement. At the time of the sale, the front door of the building remained locked and when no prospective buyers appeared, Bank's employees left the store. Bank did not credit Davidson's account on date of sale; it retained the repossessed equipment until after Davidson filed his original petition. The items were eventually sold to Sneed privately some four months later without notice to the public or to Davidson. Sneed paid Bank $1,000 for the equipment, less than ¼ of the stipulated value at time of sale.

On December 20, 1973 Davidson initiated the present suit against Sneed (later dismissed) and Bank for conversion of property by means of a wrongful taking of the equipment, asking for $4,782 actual damages, $14,000 loss of earnings and $50,000 punitive damages. Bank answered denying all charges but stating that notwithstanding its total innocence, it would set off the amount owed on the note (deficiency) against the plaintiff's claim of actual damages in full settlement of all issues.

Trial was had to a jury. Davidson went to the jury on the theory that Bank had

---

1. Davidson rented his shop from Bank.

2. Sneed also rented this building from Bank. Testimony also suggests Sneed was heavily in

debt to Bank and had at one time done some work for Bank.

converted the property because it "was not sold in a commercially reasonable manner."[3] It was stipulated by the parties the value of the property equaled the balance remaining unpaid on the note in the amount of $4,285. The jury was instructed that if it found conversion by commercially unreasonable sale, the court would determine the actual damages and if it found such conversion by Bank was malicious and with wilful intent to deprive Davidson of his property, punitive damages would be proper. The jury found the issues in favor of Davidson and awarded him $20,000 in punitive damages. The judgment on the verdict further provided:

"IT IS THEREFORE FURTHER ORDERED, ADJUDGED AND DECREED BY THE COURT that Plaintiff's claim for actual damage at the fair market value of the property at the time of the conversion is set-off pursuant to said stipulation by the balance remaining unpaid on the note and said note is hereby merged into judgment and canceled."

Bank appealed the award of punitive damages, specifically claiming it was error to instruct the jury that punitive damages are allowed for failure to sell in a commercially reasonable manner. The Court of Appeals affirmed, concluding there was no challenge to the legality of the repossession itself, but only as to the method of notice and sale of the repossessed property, which was not done in a commercially reasonable manner. Thus it found there was a conversion which gave rise to punitive damages. Bank seeks certiorari.

■ We agree with the opinion and result of the Court of Appeals holding the jury was properly instructed as to punitive damages. If repossessed property is sold in a commercially unreasonable manner there is a conversion, the actual damages being the difference between the value of the property and the proceeds of the sale. If there is a conversion, and the actions are malicious or wilful, punitive damages may be awarded by the jury under existing statutory and case law. Because this is a case falling within the purview of Article 9 of the Uniform Commercial Code concerning the criteria for determining the basis for punitive damages pursuant to this act, and is a case of first impression in Oklahoma, we grant certiorari and affirm the trial court.

In its brief Bank admits that conversion may be the result of either wrongful repossession or wrongful sale, and we agree.

■ Any illegal taking or wrongful assumption of rights of another to personal property constitutes conversion. There may be conversion by a secured party where his acts are in defiance of the rights of the mortgagor.[4] This may include improper sale of repossessed property.[5]

■ Under the Uniform Commercial Code a debtor may recover any loss caused by the secured party's failure to comply with its default provisions.[6] In general the measure of actual damages for failure to sell in a commercially reasonable manner is the difference between price obtained and price seller could have obtained with exercise of due diligence.[7] In other words the mortgagee is not entitled to a deficiency judgment.[8] Jury was properly instructed it could find conversion from acts of Bank.

Bank has tacitly conceded it failed to dispose of the property in a commercially reasonable manner by failing to preserve such point on appeal, if not by stipulating away its right to a deficiency judgment. It bases its right to rehearing on lack of authority of a jury to award punitive damages (1) where there is no determination of actu-

3. 12A O.S.1971 § 9–504.

4. *Beneficial Finance Co. of Tulsa v. Wiener*, 405 P.2d 691 (Okl.1965).

5. *Parks v. Thompson & Wilkerson*, 129 Okl. 256, 264 P. 607 (1928).

6. 12A O.S.1971 § 9–507(1).

7. *A to Z Rental, Inc. v. Wilson*, 413 F.2d 899 (10th Cir. 1969).

8. *Dynalectron Corporation v. Jack Richards Aircraft Co.*, 337 F.Supp. 659 (W.D.Okl.1972).

al damages and (2) where the repossession itself is not wrongful.

■ It is settled in Oklahoma that for a jury to award punitive damage, actual damages must first be shown. The trial court and the parties stipulated the value of the collateral equaled the debt, consequently if punitive damages are awarded the requisite actual damages are present by stipulation. Bank may not extricate itself from liability for punitive damages by admitting the amount of actual damages sustained and then claiming because it has made this concession there are no actual damages on which to base a punitive award.

■ Bank's second point is more complex. Although Davidson elected to sue in conversion, petition for rehearing is based on the idea that under the U.C.C. punitive damages should not be awarded because the U.C.C. does not specifically provide for them. 12A O.S.1971 § 1–106 provides exemplary damages may not be had except as specifically provided in the Code or *by other rule of law*. Although the U.C.C. does not explicitly allow punitive damages for commercially unreasonable sale, if that right does exist outside the Code, it is retained or permitted through § 1–106.

Numerous cases, not decided under the U.C.C. have awarded punitive damages for actions involved in repossession of collateral where aspects of malice, fraud, or oppression are shown. Although the U.C.C. does not favor punitive damages, these jurisdictions have applied rules of damages, including punitive, in proper cases under aggravated circumstances. See *Goetz v. Security Industrial Bank*, 508 P.2d 410 (Colo.App. 1973) where punitive damages were permitted against a bank who refused to return plaintiff's tools that it had wrongfully repossessed. *Klingbiel v. Commercial Credit Corporation*, 439 F.2d 1303 (10th Cir. 1971) allowed punitive damages for unlawful repossession of a car where plaintiff was given no notice of repossession and was not in default. *Southwestern Investment Co. v. Neeley*, 452 S.W.2d 705 (Tex.1970) allowed punitive damages five times that of actual damages where defendant had sold plain-

tiff's furniture before actual repossession. In *Home Finance Company v. Ratliff*, 374 S.W.2d 494 (Ky.App.1964) the trial court awarded actual and punitive damages because mortgagee did not sell collateral at a public sale. The Kentucky appellate court reversed the punitive damages, not because they were improper in such a case, but because the improper sale was not willful and thus the issue of punitive damages should not have been submitted to the jury. *Franklin Inv. Co. v. Homburg*, 252 A.2d 95 (D.C.App.1969) allowed punitive damages for wrongful repossession *under the U.C.C.*. The court in *John Deere Company v. Nygard Equipment, Inc.*, 225 N.W.2d 80 (N.D. 1974) allowed punitive damages where mortgagee had seized and detained plaintiff's equipment for 2½ years. Also see *First Security Bank & Trust Co. v. Roach*, 493 S.W.2d 612 (Tex.Civ.App.1973); *Duke v. Placke Chevrolet, Inc.*, 443 S.W.2d 433 (Mo. 1969).

This court has held a jury may award punitive damages if the self-help repossession itself is unlawful for one reason or another. *Ray v. Navarre*, 47 Okl. 438, 147 P. 1019 (1915); *Rogers v. Benford*, 83 Okl. 270, 201 P. 646 (1921); *Murrell v. Griswold*, 338 P.2d 150 (Okl.1959).

■ Recently in *Z. D. Howard Company v. Cartwright*, 537 P.2d 345 (Okl.1975) this court allowed punitive damages for material misrepresentation and breach of warranty under the U.C.C. where the breach amounted to an independent willful tort, stating where the U.C.C. recognizes a right to recover damages but makes no provision as to measure of damages, non-code law continues to determine what damages are recoverable. Because the U.C.C. permits recovery of damages in an action for conversion of repossessed property, punitive damages are recoverable in such action where secured party's acts are wanton, malicious and intentional. See *Z. D. Howard Company v. Cartwright*, supra at p. 348. In this case Bank does not seriously dispute evidence of its acts was such that a jury might find them to be malicious and wilful.

The common law rule of conversion and its resultant punitive damage instruction was proper. The decision to award punitive damages for Bank's acts is within the province of the jury. Bank's cavalier manner in its dealings with Davidson is sufficient evidence to send the question of punitive damages to the jury. As pointed out in Davidson's brief, the entire sequence of events involved in the sale was improper. The Bank did not give proper notice of the items to be sold. The only justification Bank gave for its failure to pursue a likely market for sale of the equipment is that it did not want to spend the money. On the sale date Bank's officer did not open the front door or even attempt a sale. Bank permitted Sneed to borrow items belonging to Davidson prior to default on the note in order that Sneed could open a competing business. Bank retained the collateral after default for several months without crediting it against Davidson's note. The final sale was made to Sneed for a price less than ¼ the stipulated value of property at time of sale. These facts are evidence of the tortious conduct upon which the jury based its award of punitive damages.

■ A secured party who repossesses (and sells) without judicial action subjects himself to liability for any tortious conduct.[9] A bank taking possession of collateral for a defaulted loan cannot be permitted to ignore completely the rights and interests of the debtor. The U.C.C. provides the Bank a right to minimize its losses by conducting a commercially reasonable sale; it affords the defaulting borrower fair value or credit for the repossessed chattel.

Submitting the question of punitive damages to the jury in the circumstances of this case was proper.

AFFIRMED.

WILLIAMS, C. J., HODGES, V. C. J., and DAVISON, IRWIN, BERRY, LAVENDER and SIMMS, JJ., concur.

BARNES, J., dissents.

9. *Southern Industrial Savings Bank v. Greene*, 224 So.2d 416 (Fla.App.1969).