In re Jackie Carrol BUTTRAM,
Bankrupt.

The FIRST NATIONAL BANK AND
TRUST COMPANY OF TULSA, a
national banking assoc., Plaintiff,

v.

Ross HUTCHINS, Trustee, Defendant.

Bankruptcy No. 75–B–150.

United States Bankruptcy Court,
N. D. Oklahoma.

Dec. 19, 1979.

In a series of transactions the bankrupt had secured to The First National Bank and Trust Company of Tulsa ("Bank") all equipment at the three locations for loans or advances of monies made to him by the Bank. As a result of these transactions the Bank filed various documents with the office of the County Clerk for Oklahoma County, State of Oklahoma ("Clerk").

In one instance the document filed with the Clerk was the short form of financing statement commonly referred to as a U.C.C. 1. In other instances the document, or documents, filed with the Clerk consisted of a longer form combining terms of a note, security agreement and financing statement and making reference to laundry equipment as described on schedules or lists which were purportedly attached thereto.

Because of the Clerk's filing methods and the handling of the various documents when making and certifying copies the proof regarding the filing of described schedules or lists is not as decisive as might be ideally preferred. However, considering all evidence both oral and documentary relating to the transactions and various filings with the Clerk, the following facts regarding the collateral at each location will be found.

Ross Hutchins, Tulsa, Okl., trustee in bankruptcy in the case, for the estate.

Paul B. Naylor, Tulsa, Okl., for The First National Bank and Trust Co. of Tulsa.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

WILLIAM E. RUTLEDGE, Bankruptcy Judge.

The following findings of fact and conclusions of law are made and entered in the captioned proceeding.

*Findings of Fact*

The bankrupt was engaged in the business of operating three public, coin-operated laundries. The locations of the laundries were as follow:

(a) 1414 N. Harvard, Tulsa, OK. ("Location No. 1")

(b) 6 S. Cincinnati, Sperry, OK. ("Location No. 2")

(c) 2237 N. Harvard, Tulsa, OK. ("Location No. 3")

*Location No. 1*

A security interest was granted February 18, 1972, to secure $4,205.94 and extensions, renewals, or other indebtednesses. The short form of financing statement (U.C.C. 1) specifically describing the items of collateral was filed with the Clerk on February 23, 1972.

On November 12, 1973, the original loan was refinanced by execution of a note in the amount of $4,376.60. On November 16, 1973, a copy of a combined form of note, security agreement and financing statement was filed with the Clerk indicating the collateral to be "All the Laundry Equipment Listed and Described on Attached Schedule I". The evidence is inconclusive as to whether the described schedule was filed.

*Location No. 2*

A security interest .was granted March 31, 1972, to secure $10,184.12 and extensions, renewals, or other indebtednesses. A copy of a combined form of financing statement and security agreement was filed with the Clerk on April 4, 1972. The filed document indicated the collateral to be "All Coin-A-Matic laundry equipment listed and described on attached Schedule I". Attached to this filed document was a "Schedule I" specifically describing the items of collateral at this location.

*Location No. 3*

A security interest was granted February 15, 1974, to secure $7,829.94 and extensions, renewals, or other indebtednesses. A copy of a combined form of note, security agreement, and financing statement was filed with the Clerk on February 22, 1974. The filed document indicated the collateral to be "All laundry equipment listed and described on attached Schedule I and made a part hereof". The evidence is inconclusive as to whether the described schedule was filed.

On August 20, 1974, all indebtedness due on outstanding notes was consolidated with an additional debt of $1,500 incurred by overdraft and a note was executed by the bankrupt to the Bank in the amount of $21,648.50. A new form of note, security agreement, and financing statement was executed which was intended to secure to the Bank the collateral at all locations. On August 23, 1974, a copy of such document was filed with the Clerk. The filed document described the collateral to be "All of the laundry equipment set forth, listed and described on Schedule I attached hereto and made a part thereof". The mentioned list of collateral was not filed with this document.

The voluntary petition of the bankrupt was filed in this Court on February 5, 1975, at 11:10 a. m. On that same date, February 5, and at a time the bankrupt described as "after lunch" a representative of the Bank called on the bankrupt for the purpose of repossessing the laundry equipment. The note of August 20, 1974, was in default at this time with a principal balance due of $16,828.46.

At this time the bankrupt was under the impression that his voluntary petition had been filed the previous day, February 4, and so informed the Bank's representative. Despite the fact that this information had been imparted to the representative, the bankrupt "signed papers" at his request and the representative took possession of the collateral at the various locations.

At the date and time of bankruptcy the bankrupt had possession of all collateral which the Bank thereafter and with knowledge of bankruptcy took into its possession and sold without seeking approval of this Court.

There is some evidence that on or about February 7, 1975, the Bank gave notice, the exact nature of which is not reflected by the evidence, to the bankrupt of the intended sale of collateral. Through some indefinitely described process of solicitation of bids and negotiation the collateral was sold by the Bank at private sales for amounts as follow:

| Location | Date of Sale | Sale Price |
|---|---|---|
| # 1 | 3– 1–75 | $1,700 |
| # 2 | 2–28–75 | 1,250 |
| # 3 | 2–24–75 | 4,500 |
| | Total obtained | $7,450 |

Other evidence relating to value of the collateral was introduced by the Bank through testimony of a liquidator and appraiser who testified he had viewed the collateral and held the opinion that the Bank had obtained more than the collateral was worth.

Evidence of the trustee as to value of the collateral consisted of testimony of the bankrupt relating to the price he had paid when the collateral was acquired and its condition and fair market value at the time of repossession by the Bank. In the opinion of the bankrupt the valuation of the security at the time of repossession was as follows:

| Location | Value |
|---|---|
| # 1 | $ 3,500 |
| # 2 | 3,000 |
| # 3 | 8,500 |
| Total | $15,000 |

The Bank was scheduled by the bankrupt as a creditor. Notice of the filing of the case was mailed to all creditors on February 18, 1975. The first meeting of the creditors of the bankrupt was convened on March 5, 1975, at which time the trustee was appointed. The Bank appeared at the first meeting of creditors by its attorney of record in this proceeding.

On March 11, 1975, the Bank filed a proof of secured claim which was insufficiently documented to clearly establish that the Bank held a perfected security interest in the collateral. No action was taken on this proof of claim and on September 8, 1975, the trustee filed a complaint alleging conversion by the Bank of the laundry equipment and seeking judgment in the amount of $16,000 plus attorneys fees and costs. The answer of the Bank to this complaint denied conversion. At a pre-trial conference convened on October 28, 1975, the parties agreed that the issues were to be submitted upon a stipulation of facts.

Approximately a year elapsed with no stipulation being filed and at a status conference convened by the Court it was announced that the parties had found it impossible to stipulate to all facts necessary to a determination of the issues.

At that point the Court, perhaps unwisely, but in an effort to convince the Bank that its problem of proving a perfected security interest appeared from all that had gone before to be a real and formidable one, directed the Bank to file a complaint and clearly assume the burden of proof in that regard. This was done; the trustee answered; and trial eventually was held upon the complaint of the Bank.

In preparation for trial the Clerk was deposed at Oklahoma City. Both parties attended the taking of the deposition which was introduced into evidence at time of trial. The record in the bankruptcy case indicates the expenditure of $62.29 from funds of the estate for costs which were attributable to the trustee's participation in the taking of this deposition.

## Conclusions of Law

The issues in this proceeding wherein the Bank is plaintiff and in the proceeding previously commenced by the trustee's complaint are the same. The decision and Judgment entered here will be dispositive of all issues in both proceedings and for that purpose the two proceedings will be deemed to be consolidated and Judgment here rendered will moot entry of a separate Judgment upon the trustee's complaint.

The issues may be defined as follow:

(A) Did the Bank at the time of bankruptcy have a valid, perfected security interest in any or all of the equipment used by the bankrupt in his laundry operation?

(B) Is the trustee and the estate entitled to a money judgment against the Bank for conversion arising out of the post-bankruptcy repossession and sale of the collateral?

█ Upon the first issue it will be concluded that the Bank at the time of bankruptcy held a valid and perfected security interest in all the collateral at all locations.

Preceding the final consolidation transaction the bankrupt had granted an interest to the bank in the equipment at each location to secure not only the loans being contemporaneously made but also all extensions, renewals, or other indebtednesses. In the transaction consolidating all debts it is clear that it was the intention of the parties that all the collateral would continue to secure the consolidated debt. Preceding notes may have been cancelled but the prior created security interests were not extinguished.

The collateral, by definition, is "equipment", 12A Okl.St.Ann. § 9–109(2). The proper place to file to perfect a security interest in this type of collateral is the office of the County Clerk of Oklahoma County, 12A Okl.St.Ann. § 9–401(1)(c). The instrument which is to be filed must be a "financing statement", 12A Okl.St.Ann. § 9–302(1).

In pertinent part, 12A Okl.St.Ann. § 9–402(1) sets out the formal requisites of a financing statement as follows:

"A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral."

As to the sufficiency of the description of collateral in a financing statement 12A Okl. St.Ann. § 9–110 states:

"For the purposes of this Article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

The Uniform Commercial Code Comment to § 9–110 states that "[t]he test of sufficiency of a description laid down by this Section is that the description do the job assigned to it—that it make possible the identification of the thing described".

The evidence relating to the filing of a list or schedule of collateral with two of the filed documents is inconclusive. The last document filed as a result of the consolidation transaction was not accompanied by a schedule. However, each document filed was sufficient in form and content to constitute a financing statement under the expressed requisites of 12A Okl.St.Ann. § 9–402 and the form of a statement which is there set out. Each of the documents which may be in question did at least state the collateral to be "laundry equipment" thus meeting the required standard of indicating the type of collateral and making possible its identification.

■ Upon the issue of whether the Bank is guilty of conversion (the trustee's theory for recovery of money damages expressed in his original complaint and in answer to the Bank's complaint) it will be concluded that the Bank did convert the collateral. Even though it had a valid, perfected interest in the collateral which under the proof must be concluded to have had no equity value to the estate the Bank, by resorting to self help after bankruptcy jurisdiction had attached, committed a trespass upon property over which the Court had jurisdic-

tion; *First National Bank of Portsmouth v. Cope*, 385 F.2d. 404 (1st Cir. 1967).

■ Furthermore, with adoption of the Bankruptcy Rules effective October 1, 1973, it has been clear that action such as the Bank here took to enforce its lien was stayed by the filing of the bankruptcy petition. This stay remained in effect until relief was afforded by the Bankruptcy Court or terminated by certain events not occurring here (Bankruptcy Rule 601). The Bank obviously violated the stay and with knowledge of the pending bankruptcy.

At least in passing, the term "contempt" could be applied to the Bank's actions. But the trustee has not chosen to plead in this pejorative term and the Court, at this stage of this protracted proceeding, will let that dog lie.

Not only is the Bank guilty of wrongful repossession without Court approval but it has also wrongfully foreclosed without giving the requisite notice provided for in the Oklahoma Uniform Commercial Code.

■ Upon the filing of the petition in bankruptcy, title to the collateral automatically vested in the trustee per § 70a of the Bankruptcy Act. The trustee became the "owner" of the collateral and, by definition, a "debtor" pursuant to 12A Okl.St.Ann. § 9–105(d) providing, in pertinent part:

"* * * Where the debtor and the owner of the collateral are not the same person, the term 'debtor' means the owner of the collateral in any provision of the Article dealing with the collateral, * * "

In governing a secured party's right to dispose of collateral 12A Okl.St.Ann. § 9–504(3) provides (with certain exceptions not applicable here) that the intended sale or other disposition of collateral must be noticed to the debtor. The trustee who is by definition a "debtor" was a party to be noticed under § 9–504(3) and this was not done. The post-bankruptcy notice given solely to the bankrupt is not sufficient to meet notice requirements.

Any doubt about the interaction of bankruptcy principles and those of the Uniform Commercial Code are resolved in the introductory, general provisions of the Code. 12A Okl.St.Ann. § 1–103 provides that "Unless displaced by the particular provisions of this Act, the principles of law and equity, including * * * bankruptcy * * * shall supplement its provisions".

Liability of the Bank as a secured party that failed to dispose of its collateral in the manner provided by the Code is set out in 12A Okl.St.Ann. § 9–507(1):

"If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten per cent of the cash price." ·

The first sentence of the quoted Section is obviously not operative at this time. But it may again be noted that, under the facts, the Bankruptcy Rules (Rule 601) imposed an automatic restraint upon action which the Bank here took. That restraint was not observed. The collateral was disposed of before the trustee had an opportunity to enforce that restraint by specific order of the Court.

The concluding sentence of the quoted Section applies only to collateral which is consumer goods. The collateral here is to be typed under the Code as equipment and not as consumer goods. However, in cases with facts similar to those here save for the typing of the collateral, the penalties provided in this sentence have been imposed in favor of the bankruptcy trustee. See *In re*

*Collins,* C.C.H.Sec.Trans.Rep. 51715 (S.D. Ohio 1971); *In re Frye,* 9 U.C.C.Rep.Ser. 913 (S.D.Ohio 1970); *In re Hughes,* 47 Am. Bankr.L.J. 248 (E.D.Tenn.1972).

■ The trustee's basis for recovery of a money judgment for damages arising out of conversion and the wrongful acts of the Bank will be "any loss" caused by such acts as stated in the second sentence of § 9–507(1). Under the construction given this provision by the Supreme Court of the State of Oklahoma in *Davidson v. First Bank and Trust Company, Yale,* Okl., 559 P.2d 1228 (1976), it would appear that the measure of actual damages could in this instance be no greater than the difference between the maximum provable sale value of the collateral and the amount obtained through the Bank's disposition. And also, before entry of a money judgment in any amount based on actual damages, the Bank would have the benefit of setting off against this difference the balance, if any, of its debt which remained after crediting the moneys realized upon the sales which it made. Though actual damages may exist, a monetary award based on this measure of damages would depend upon existence of an "equity" in the collateral.

■ No equity existed here. Taking the best view of the trustee's evidence regarding value, the collateral was worth no more than $15,000. The principal amount of the Bank's debt at time of sale was $16,828.46. Thus far no action has been taken by the Bank to seek allowance of its proof of secured claim as a general, unsecured claim for any deficiency. Until and unless a determination in this regard is sought under Bankruptcy Rule 306(d) no finding need be made as to the amount of the deficiency. For the purposes of this decision it is only necessary to note that a deficiency exists and that there was no equity in the collateral.

Though *Davidson v. First Bank and Trust Company, Yale,* supra, would appear to sanction the award of punitive damages in this situation the trustee's pleadings do not seek such damages for the estate and the

case was not tried upon the theory of a possible punitive damage award.

To this point, that which has gone before is cold comfort to the trustee. He has carried the battle in establishing conversion but has taken no ground. And in the actions he has undertaken to assert the jurisdiction of this Court and adherence to its procedures he has expended his own time and effort and substance of the estate. The trustee has filed one complaint and answered to another. He has participated in at least two pre-trial conferences; in the taking of a deposition at Oklahoma City; and in a trial. And it has directly cost the estate $62.29 in the taking and use of the deposition.

Under § 2a(18) of the Bankruptcy Act the Court may allow costs to either party as a matter of discretion. Considering circumstances similar to those here, *In re Swofford*, 112 F.Supp. 893 (D.C.Minn.1952) discusses at length the proposition of allowance to the trustee of an attorney fee as part of the costs. The Court there concluded an award of costs to be proper and it will be here concluded to be proper under the facts of this case.

The trustee is an attorney and, pursuant to Order of this Court, was authorized to represent the estate in bankruptcy. It will be concluded that the reasonable value of his services which he rendered as attorney for the estate in this dispute with the Bank is $500. This amount together with the amount of $62.29 expended out of funds of the estate will be awarded to the trustee as costs.

Judgment will be entered against plaintiff in the amount of $562.29.