## SHAWNEE NATIONAL BANK v. PERRY.

No. 18846. Opinion Filed April 2, 1929.

E. D. Reasor, F. H. Reily, and J. H. Reily, for plaintiff in error.

Goode & Dierker, for defendant in error.

LEACH, C. This action was commenced in the district court of Pottawatomie county by the Shawnee National Bank against Charley Perry, defendant, it being alleged by plaintiff that it was the holder and owner of a promissory note executed by the defendant Perry to R. W. Belcher, on which there was a balance due of $422.50 and attorney fee; that a chattel mortgage covering a team of mules, cow, calf, auto and 70 acres of cotton, had been executed by the defendant in favor of the bank to secure payment of the note; that default had been made in the payment of the note, and plaintiff prayed judgment for possession of the mortgaged property or its value. A writ of replevin was issued in the cause and a portion of the mortgaged property was taken thereunder.

The defendant answered in the cause admitting execution of the note and mortgage, and alleged that the bank appointed R. W. Belcher as its agent, and directed the defendant to pay over to him all the proceeds from the mortgaged property; that in accordance therewith he paid to the said Belcher $785 in money, and alleged that the mortgage had been satisfied and plaintiff overpaid.

The defendant also filed a cross-action or petition wherein he alleges in part that he rented lands from R. W. Belcher for the year 1925, and that Belcher agreed to furnish him funds with which to make a crop; that in order to obtain such funds Belcher required him to go with him to the plaintiff bank about February 1st, where he, defendant, signed a note and mortgage for $250; that he received no money or other thing of value from the bank, but the said Belcher did from time to time furnish him with small sums of money, the exact amount being unknown to defendant; that about July 1st Belcher advised defendant that it was necessary to make another note, as he was short of money and could not furnish defendant further without borrowing, whereupon by direction of Belcher he went to plaintiff bank and signed and executed another note and mortgage, represented to be for $500, which note he believes was signed by said Belcher as a joint-maker; that thereafter the bank in writing instructed the defendant that Belcher was its agent, and directed him to turn over to the said Belcher the proceeds from the sale of the property covered by said mortgage, and that it was the owner and holder of said note; that he delivered to Belcher the cow covered by the mortgage with the agreement that a credit should be allowed on the note for the sum of $50; that the said Belcher claimed and took possession of the first three bales of cotton ginned by the defendant, and refused him permission to sell the same, although he, defendant, was offered 26 cents per pound therefor, and retained the three bales until it was taken under the writ; that by reason of the unlawful taking and seizure of said cotton, plaintiff became liable and bound to the defendant for its value in the sum of $380; that on the 8th day of October, 1925, Belcher hauled to market three bales of cotton belonging to de-

fendant which he failed and refused to account for, by reason of which the plaintiff is liable for its value in the sum of $300; that about December 1, 1925, while defendant was absent from home, the said Belcher, agent of the plaintiff bank, over objection of defendant's wife, entered upon defendant's premises and carried away 3,000 pounds of cotton, and converted the same to the use and benefit of plaintiff, the value of such cotton being $172.50; that in addition to said described cotton plaintiff took under the writ of replevin a bale of picked cotton of the value of $75 belonging to defendant and located at Wilhelm's gin, and unpicked cotton in the field reasonably worth $700, and a span of mules, of the reasonable value of $200; that in addition thereto the plaintiff, without any writ or right, acting through its said agent, R. W. Belcher, took and retained one heifer calf and certain farming implements of the total value of $132 belonging to the defendant.

Defendant further alleged that in addition to the cotton so seized, he, defendant, did pick and have ginned 11 other bales of cotton which he sold and did pay to Belcher, the agent of the plaintiff bank, therefrom, the sum of $785 in cash, which sum was in excess of all notes executed by the defendant to the bank; that plaintiff at sundry places and to divers persons stated that it intended to have the defendant sent to the penitentiary; that said statements were made for the purpose of intimidating the defendant and preventing him from asserting his rights in the premises; that the acts of plaintiff were part and parcel of a plan and conspiracy entered into between plaintiff and said Belcher to deprive defendant of his property and labor; that said acts were unlawful, malicious, fraudulent, and oppressive.

Defendant prayed for judgment for the sum of $1,877.50 actual damages and for $5,000 exemplary damages.

The plaintiff bank filed a reply generally denying the answer and cross-petition of defendant, and further replied as follows:

"Plaintiff admits that the defendant was a tenant of R. W. Belcher during the year 1925, and that said R. W. Belcher acted as the agent of plaintiff for the purpose of collecting money from the defendant and paying the same to the plaintiff to be credited upon certain notes owed by the defendant to plaintiff. * * *

"For further reply this plaintiff alleges that it has no knowledge of the transactions and affairs of the said R. W. Belcher and

the defendant, that has been heretofore stated herein, but this plaintiff is informed and believes, and therefore alleges, that the said defendant has been fully and truthfully accounted with by the said R. W. Belcher, and that after a full and correct accounting between the said R. W. Belcher and said defendant, that the said defendant is indebted to the said R. W. Belcher, at this time in the sum of $190.51. A full, complete, itemized statement showing all of the charges and credits between the said R. W. Belcher and the said defendant is hereto attached, marked 'Exhibit A,' and made a part hereof."

The cause was tried to a jury, who returned a verdict for the defendant for a return of the property taken under the writ of replevin, or for its value, in the sum of $1,877.50, and for exemplary damages in the sum of $1,500. Judgment was entered by the court in accordance with the verdict.

After unsuccessful motion for a new trial, the plaintiff brings the cause here for review and sets up ten assignments of error in its petition and four in its brief filed herein, but fails to confine and present its argument under any specific assignment of error or definite proposition of law, but contents itself with the statement:

"We desire to present our argument and authorities in this case under all of the assignments of error set forth above for the consideration of the court."

The first contention made and argued by the plaintiff, as we gather from its brief, is that there was no evidence on which to sustain the verdict of the jury wherein it found and fixed the value of the property belonging to the defendant and taken under the writ of replevin to be $1,877.50. Upon this proposition plaintiff says there was no evidence to impeach the return of the officer on the writ of replevin showing the property taken thereunder, or of the value placed upon such property by the appraisers. The evidence supports the officer's return as to what property was taken under the writ except as to the quantity of unpicked cotton and as to that the return shows, "About three bales unpicked," while the evidence of the defendant was to the effect that he estimated, judging by the yield and what he had picked, that he had about 15 bales unpicked in the field at the time of the levy; there was some other testimony tending to show the amount of unpicked cotton in the field by the testimony of a witness as to the number of and lengths of unpicked or partially picked rows of cotton at the time of the levy. We fail to find in the record where

the officer's return on the writ or the appraisement made of the value of the property taken under the writ was brought in issue or where it was introduced in evidence. No appraisement of replevined property is authorized by statute, and such appraisement in the instant case was without weight or value in fixing the value of the property taken under the writ.

Plaintiff, after estimating, computing, and analyzing, upon what the writer of the brief concludes to be all the evidence on the question, says the utmost actual damage or value of the defendant's property would be $587. Plaintiff did not at any time demur to the defendant's evidence, or ask for an instructed verdict in its favor upon defendant's answer or cross-action, nor did it ask for any instruction or make any objections to the instructions given.

"Where plaintiff submits his case to the jury without demurring to the evidence or asking an instructed verdict, or otherwise legally attacking its sufficiency, the question whether there is any evidence reasonably, tending to support the defense is not presented for review by plaintiff's motion for a new trial." Myers v. Hubbard, 80 Okla. 97, 194 Pac. 433; Oklahoma State Bank of Ochelata v. Ward, 127 Okla. 45, 259 Pac. 644.

"Where the complaining party contends that the pleadings and evidence sustain a proposition of law contrary to the judgment rendered, and the record discloses that the proposition contended for was not raised by demurrer to or motion for judgment on the pleadings or demurrer to or motion for judgment on the evidence, objections to the sufficiency of the pleadings and of the evidence to sustain the judgment are waived and not subject to review by this court." Beam v. Farmers & Merchants Bank, 104 Okla. 158, 230 Pac. 881.

Notwithstanding the rule announced in the above and similar cases, we have read the testimony in this case, which covers approximately 440 pages of the record, with a view of endeavoring to ascertain if the verdict and judgment were supported by the evidence and record, and while the evidence is conflicting upon some points and not as clear and definite as might be desired on others, yet we are of the opinion and find that there was sufficient upon which the jury could have reached its verdict and we are of the opinion that the verdict is reasonably supported by the evidence.

"Where the evidence is conflicting, but there is sufficient evidence introduced by plaintiff upon which the jury could reasonably predicate their verdict, and instructions given by the court are free from error, this court, upon appeal, will not reverse the judgment." Oklahoma State Bank of Ochelata v. Ward, supra.

Plaintiff in error next contends that the court erred in submitting to the jury the question of exemplary damages, and that the verdict for $1,500 exemplary damages is clearly not supported by any evidence.

Under this proposition plaintiff says that a great deal of evidence was submitted that was obviously prejudicial, not within the issues, and "It is only necessary for the court to read the evidence to see what prejudicial matters were woven into it." Specific reference is made to a portion of the testimony of the wife of the defendant, Perry, relative to the taking of certain cotton by Belcher over her protest. The first testimony given by the wife related to certain records kept or made by her of payments made to Belcher by her husband, who was unable to read or write, except his name, to which testimony the plaintiff objected upon the ground that the witness was the wife of defendant. The objection was overruled by the court on the ground she was acting as agent for her husband. We find no further objection in the record made to any later or other testimony of such witness. If error is to be predicated upon the admission of evidence, proper and timely objection should be made to the same.

Without pointing out the specific evidence complained of, or where it objected thereto at the trial, plaintiff further and generally presents argument to the effect that prejudicial evidence was admitted as to the dealings between Belcher, the agent or landlord, and the defendant, Perry, and the acts of Belcher in taking certain of the mortgaged or other property, and it is contended by plaintiff that Belcher was acting individually, not within the scope of his authority as agent of the plaintiff, without the knowledge of the plaintiff, but that defendant did so understand or should have known, and that the bank was therefore not liable or bound by the acts of the said Belcher, and in support thereof cites the general rules announced in Corpus Juris to the effect and in substance that a principal is not liable for torts committed by an agent while acting for himself and adversely to the interest of the principal (2 C. J. 855), and that the authority of a special agent must be strictly pursued and his authority is limited to the particular business and instructions given (2 C. J. 583) and authorities in line therewith.

It will be observed from reading the reply of the plaintiff bank that, while it professed want of knowledge of the transaction and dealing between R. W. Belcher and the defendant, yet, nevertheless, it alleges in its reply that it is informed and believes that the defendant has been fully accounted with by the said Belcher, and that after a full accounting between them, as shown by an itemized statement of the charges and credits attached thereto, the defendant is indebted to the said Belcher in the sum of $190.51. From such reply it would appear that the plaintiff bank in a manner invited the very matter and alleged error of which it now complains. The plaintiff bank admits that it wrote a letter dated October 24, 1925, addressed to the defendant regarding the indebtedness and mortgaged property which reads as follows:

"Mr. R. W. Belcher has authority to handle for us, any moneys derived from the sale of cotton or other property upon which we hold a mortgage, and we will thank you to pay the money to him as our agent as may be convenient to you."

The defendant Perry testified in part and in substance that the bank sent him a notice to come in and pay, whereupon he went to see the agent Belcher with reference to the matter and payments made him, and Belcher reminded him that he was authorized by letter to collect the debt and refused to surrender or sell certain cotton that had been delivered him by defendant; that the bank also sent a collector out to see the defendant and advised him that he came out to foreclose him, and he, defendant, informed such officer and collector that he had paid the indebtedness to the agent Belcher under authority of the letter of instructions from the bank; that upon advice of the collector, he, with his attorney, went to see the plaintiff bank; that later he went to the residence of Belcher with a truck and asked permission to remove and sell certain of the baled cotton which he had surrendered to Belcher, but was unsuccessful in obtaining the same, the said Belcher declining the request with very strong and profane language; that he, defendant, was picking his cotton, had about 2,000 pounds piled up on the ground in the field when the officer came out and stopped him.

C. E. Dierker, who was one of the attorneys for the defendant, testified that prior to the filing of this suit he went with the defendant to the plaintiff bank, and there talked with Mr. Riddle, who was either cashier or vice president of the bank. The testimony of such witness relating to the conversation is as follows:

"I says, 'Howard, this man Perry has been to see us about his trouble with you, and I want to go over it with you.' He says, 'Well, that is one of Belcher's negroes, we just let Belcher handle that. We are not concerned with it at all. Whatever Belcher does with it is all right with us, we just leave it entirely up to Belcher.' That they were looking to Belcher to take care of it for them, that was the substance of his language. Q. Was there any conversation about whether the negro was indebted to the bank, or not? A. I told him from the way I had gone over the matter, that there was no doubt but what Perry had paid both them and Belcher, or the two of them together a great deal more at that time than he owed them. They said, 'Well, they wasn't concerned about it, and didn't care, that they just left the matter entirely up to Belcher.'"

There was other testimony tending to support defendant's answer and claim which we do not deem necessary to set forth herein.

Plaintiff refers to the case of Myers v. Hubbard, supra, and quotes from the syllabus thereof as follows:

"Exemplary damages may not be recovered in a replevin action except where the taking of the property has been through unusual or aggravated circumstances, and to entitle to such recovery there should be a showing of oppression, fraud, or malice."

From an examination of that case and the facts therein, we find nothing that would preclude or bar the defendant from the recovery of exemplary damages in the instant case. In the body of the opinion in that case it is stated:

"The question of exemplary damages was not presented to the jury by instruction of the trial judge and a verdict thereon was in disregard of the trial court's instructions. No instructions having been given as to exemplary damages, no verdict could be returned therefor."

The seventh paragraph of the syllabus in that case is:

"Under section 2851, Rev. Laws 1910, exemplary damages may be recovered where the person taking has been guilty of oppression, fraud, or malice, actual or presumed."

Reference is made in the Myers v. Hubbard Case, supra, to the case of Ray v. Navarre, 47 Okla. 438, 147 Pac. 1019, in the syllabus of which will be found the following:

"A verdict, assessing damages for the plaintiff in an action of replevin, will not be set aside on the ground of the excessive-

ness of the damages, where the proceeding on the part of the defendant is vexatious and oppressive. The jury in such cases is authorized to give smart money"

—and other cases and authorities are cited in the body of the opinion upon the right to recover exemplary damages in such a case.

There appears to us, from an examination of the evidence and record in the instant case to be sufficient to warrant submission of the issue on exemplary damages to the jury, which issue appears to have been submitted on proper instructions, under which the jury found in favor of the defendant.

We do not find any reversible error in the record, and the judgment of the trial court is affirmed.

BENNETT, TEEHEE, REID, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.