**In re LA SELLE'S BICYCLE WORLD, Debtor.**

**Bankruptcy No. 89–00485–C.**

United States Bankruptcy Court, N.D. Oklahoma.

Oct. 26, 1990.

Theodore P. Gibson, Tulsa, Okl., for General Bicycle and Moped, Inc.

Jeff Steen, Broken Arrow, Okl., for Arkansas Valley State Bank.

## MEMORANDUM OPINION

STEPHEN J. COVEY, Bankruptcy Judge.

This cause comes on for hearing upon the motion of Arkansas Valley State Bank ("AVSB") requesting issuance of an order to the Trustee to disburse the proceeds generated from the sale of inventory consisting of approximately sixty (60) bicycles and miscellaneous parts.

The parties stipulated to the facts as follows:

1. On November 21, 1985, the Debtor entered into a line of credit, promissory note and security agreement with AVSB. Financing statements were signed and properly filed with the Oklahoma County Clerk on December 3 and 4, 1985. The transaction gave AVSB a perfected security interest in all present and future inventory of the Debtor.

On October 9, 1987, General Bicycle and Moped, Inc. ("General") commenced sales to the Debtor on credit. General requested financing statement information from the Oklahoma County Clerk on August 19, 1988, and the Clerk improperly advised, in writing, on August 31, 1988, that no financial statements were filed against the Debtor.

General obtained a security agreement from the Debtor dated August 19, 1988, and filed a financing statement in the office of the Oklahoma County Clerk on September 2, 1988, perfecting it's security interest in all inventory thereafter sold to the Debtor. General did not notify AVSB of its purchase money security interest in inventory, because it relied on the Oklahoma County Clerk's notification of no other security interests. On February 28, 1989, La Selle's filed a Chapter 7 proceeding under the United States Bankruptcy Code. AVSB filed a proof of claim on March 15, 1989, in the amount of $5,048.71. General filed a proof of claim on May 1, 1989, in the sum of $42,224.00. On November 7, 1989, the bankruptcy Trustee sold the inventory to a third party with the agreement of General and AVSB that the Trustee would hold the funds pending settlement of their conflicting claims. The total received from the sale was $6,600.00. The Trustee incurred administrative expenses in the amount of $1,100.00, leaving a balance of $5,500.00 to be distributed.

Forty percent (40%) of the inventory the Trustee sold represents inventory in which General has a purchase money security interest and was, in fact, property manufactured and sold by General to the Debtor. Sixty percent (60%) sold by the Trustee was property against which General has no claim.

## ARGUMENTS AND ANALYSIS

■ 12A O.S. § 9–312 sets forth the priorities among conflicting security interests in the same collateral. Specifically, subsection 3 states:

A perfected purchase money security interest in inventory has priority over a conflicting security interest in the same inventory ... if:

(a) the purchase money security interest is perfected at the time the debtor receives possession of the inventory; and

(b) the purchase money secured party gives notification *in writing* to the

holder of the conflicting security interest, if the holder had filed a financing statement covering the same types of inventory (emphasis added)

(i) before the date of the filing made by the purchase money secured party ... and

(c) the holder of the conflicting security interest receives notification within five years before the debtor receives possession of the inventory; and

(d) the notification states the person giving notice has or expects to acquire a purchase money security interest in inventory of the debtor, describing such inventory by item or type.

By sending AVSB written notice, General would have obtained a purchase money security interest in the inventory it sold the Debtor, which would have priority over AVSB's security interest pursuant to the statute. AVSB would have had fair warning of General's security interest, if the Debtor asked to borrow more monies in the future.

General failed to give AVSB proper notice pursuant to 12A O.S. § 9–312(3)(b), because the County Clerk erred in telling it that there were no prior security interests covering the same types of inventory. AVSB argues that it should not pay the cost of the County Clerk's mistake, citing *McMillin v. First National Bank & Trust (In re Fowler)*, 407 F.Supp. 799 (W.D.Okl. 1975), and *In re Daniels*, 35 B.R. 247 (Bankr.W.D.Okl.1983). The cases propose that a secured party does not bear the risks of an improper filing or indexing as long as its conduct does not lead to the error.

General argues that the security agreement of AVSB does not adequately describe the collateral under 12A O.S. § 9–203, which requires, pursuant to subsection 1(b), that "the debtor has signed a security agreement which contains a description of the collateral ..." The description must make it possible for a third party to determine whether the property is subject to a security interest. In addition, General argues that it should not be penalized for the Oklahoma County Clerk's mistake for failing to give written notice to

AVSB because it took all steps necessary to determine who, if anyone, should receive such notice.

■ Who should bear the burden of the Court Clerk's mistake? Both parties are innocent, neither contributing to the circumstances leading to the error. AVSB sufficiently described its collateral by a blanket description of "inventory" on its filed financing statement. *In re Buttram*, 2 B.R. 92 (Bankr.N.D.Okl.1979), and *Consolidated Equipment Sales, Inc. v. First Bank & Trust Co. of Guthrie*, 627 P.2d 432 (Okla.1981). General took the required steps necessary to perfect it's security interest excluding failure to notify AVSB which was the result of the Oklahoma County Clerk's error.

In *McMillin*, 407 F.Supp. 799 (Bankr.W.D.Okl.1975), the court found that 12A O.S. § 9–403(1) does not put the risk of improper filing and indexing upon the secured party, if his conduct did not lead to the filing officer's error. The section states: "Presentation for filing of a financing statement and tender of the filing fee or acceptance of the statement by the filing officer constitutes filing under this article." The U.C.C. comment to 12A O.S. § 9–407 supports this contention as well. The comment states in part: "... under section 9–403(1) the secured party does not bear the risk that the filing office will not properly perform his duties: under that section the secured party has complied with the filing requirements when he presents his financing statement for filing and the filing fee has been tendered or the statement accepted by the filing officer ..."

■ The Court has carefully scrutinized the financing statements to determine whether either party could have contributed to the Oklahoma County Clerk's mistake. The proper name of the Debtor styled on its bankruptcy schedules is "La Selle's, Inc.," two words, singular possessive. AVSB filed a financing statement naming "LASELLES, INCORPORATED" as Debtor, one word, no possessive. General's financing statement names as Debtor "LaSelle's Bicycle World, a/k/a LaSelle's, Inc.", one word, singular possessive. The

Court believes the Oklahoma County Clerk should have forwarded information found under "LASELLE INCORPORATED" to General pursuant to General's request. Nevertheless, the Oklahoma County Clerk did not forward the information and there is no testimony that she even found it to begin with. However, AVSB did not give the proper name of the Debtor on its financing statement which could have led to an indexing or reporting error; thus contributing to the Oklahoma County Clerk's failure to find AVSB's security interest. Between two innocent parties, the one whose action, however innocent, helped create the circumstances upon which an error was made must bear the costs of the mistake, in this case AVSB. General's security interest in forty percent (40%) of the inventory sold by the Trustee will be enforced.

Furthermore, the purpose of 12A O.S. § 9–312(3) is to protect future advances a prior lienor may give the debtor by putting her on notice that others may have an interest in the same type of property. AVSB gave no new advances to the Debtor. It did not rely on the additional inventory sold to the Debtor by General to secure its interest and, therefore, has not been damaged as a result of General's security interest. To allow AVSB to have a security interest in the inventory sold by General would give AVSB a windfall by allowing it an interest, to which it would not have been entitled, but for the mistake of the Oklahoma County Clerk and General's resulting failure to give written notice. The UCC comment to 12 O.S. § 9–312(3) states: "The reason for the additional requirements of notification is that typically the arrangement between an inventory security party and his debtor will require the secured party to make periodic advances against incoming inventory or periodic releases of old inventory as new inventory is received ... The notification requirement protects the inventory financer in such a situation: if he has received notification he will presumably not make an advance; if he has not received notification (or if the other interest does not qualify as a pur-

chase money interest), any advance he may make will have priority ..."

Therefore, the Court will enter a separate order directing the sale proceeds held in escrow be distributed sixty percent (60%) to AVSB and forty percent (40%) to General.